JUSTICE PERLIN
 

 delivered the opinion of the court:
 

 The issue raised by this appeal is whether a mistrial due to the State’s failure to disclose what the trial court characterized as a “material,” “prejudicial” statement made by one of its witnesses, notwithstanding a defense discovery request and a court order to disclose such statement, acts as a double-jeopardy bar to reprosecution under Oregon v. Kennedy (1982), 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083.
 

 Defendant, Patsy Franklin, was charged with murder (111. Rev. Stat. 1981, ch. 38, pars. 9 — 1(a)(1), (2)) as a result of the death of her three-year-old daughter. In response to defendant’s discovery request for a list of the State’s potential witnesses, the State identified, inter alia, Dr. Robert Stein, the Cook County Medical Examiner, who had performed an autopsy on the deceased child. On December 15, 1981, immediately prior to trial, the defense renewed its motion for the production of Stein’s statement as follows:
 

 “MR. MORRISSEY [defense counsel]: May we have your notes of your conversation with Doctor Stein?
 

 MR. PERRY [assistant State’s Attorney]: I didn’t take any notes. I—
 

 MR. GERRITY [assistant State’s Attorney]: I didn’t take any notes either. I don’t have any notes.”
 

 Shortly thereafter, the following colloquy occurred:
 

 “MR. PERRY: *** Judge we have one other motion now.
 

 THE COURT: Let’s hear it.
 

 MR. PERRY: As to Doctor Stein’s testimony, Mr. Morrissey has tendered a copy of statements that I believe he took from Doctor Stein. From the brief statements that I have here, these statements could very well be impeaching Doctor Stein. * * *
 

 MR. MORRISSEY: Your Honor, we are not sure if the State’s comments regarding — Since the statements that are before you, *** are all one sided, since the court has the benefit of what our conversations were with Doctor Stein, but not what the State’s conversations were with Stein, and since Mr. Perry apparently indicates that the doctor told him something different, we say that we have a right to that same information that we have just turned over to the State.
 

 The State apparently has taken statements from the Doctor that are different than what appears in the discovery that I just tendered to Mr. Perry. ***
 

 THE COURT: Have you delivered to them the statements of Doctor Stein? * * *
 

 MR. PERRY: I didn’t take any statements from — Any notes on statements made by Doctor Stein to me.
 

 MR. MORRISSEY: That’s not the question. It’s not a question of whether it’s in writing or not. Were there any statements made?
 

 MR. PERRY: Of course statements were made. I interviewed him for almost an hour.
 

 MR. MORRISSEY: Then we have a right to that.
 

 MR. PERRY: I’m not prepared to write everything he said to me and tender it to you. I don’t think the rules of discovery require me to do that.
 

 MR. MORRISSEY: *** If you take a statement from a doctor and now you look at my notes and you say *** the doctor’s going to be impeached by that, you know exactly what the statement is in your own mind and we’ve got a right to know what it is. * * *
 

 THE COURT: How do you argue against his point? You tell me by looking at the notes which you requested from him in limine, and tell me very specifically that he’s going to attempt to impeach the doctor. You must know something in your mind that the doctor told you which is different from what’s down here. * * *
 

 MR. PERRY: There’s a lot of things mentioned in here which could be subject to impeachment, ***. * * *
 

 MR. MORRISSEY: *** Mr. Perry sits there, looks at my notes of a conversation with Doctor Stein and says there is impeaching material in there.
 

 I want to know what statements he’s got in his mind that Doctor Stein gave him that point of view.
 

 THE COURT: I’m ordering you to tell him those statements right now.” Lawrence,
 
 [1]
 
 a potential prosecution witness] they should be revealed to the defense. If you don’t have a statement and then you walk into the courtroom before the jury and you have that man testify to a statement, I’ll declare a mistrial in this matter so fast your head will spin.”
 

 The prosecutor then pointed out several minor inconsistencies in the notes of defense counsel as to whether the injuries inflicted on the deceased child could have been due to either a belt, falling against the table, or cardiopulmonary resuscitation. The prosecutor also noted that the statement that “it was acute a single blunt trauma” was inconsistent because the doctor told him that the cause of death was multiple trauma. The prosecutor read aloud a notation, “homicide versus undetermined accident. Natural cause.” The prosecutor said only that he did not understand what the notation meant.
 

 Throughout additional pretrial motions in limine and discovery motions, the prosecutors continued to be evasive as to whether or not they had a complete .statement from certain potential witnesses. The trial court expressed agitation with what it deemed the prosecution’s inadequate compliance with discovery and warned the attorneys that:
 

 “If there were statements made [apparently referring to Mr.
 

 It is undisputed that on the medical examiner’s certificate of death for defendant’s daughter, in the space which requires an indication whether the manner of death (as distinguished from cause of death) was by “accident, suicide, homicide or undetermined.” Dr. Stein specified her manner of death as “undetermined.” Further, during Dr. Stein’s conversations with the defense attorneys on December 4 and 11, 1981, he continued to represent to them that the manner of death was “undetermined.” On December 16, 1981, in reliance on Dr. Stein’s statements, defense counsel asserted in his opening statement to the jury that the evidence would establish that on the day defendant’s daughter died, defendant punished her for drinking out of a toilet by spanking her with a belt; however, that Dr. Stein would testify that the spanking was not the cause of her death. Defense counsel suggested the testimony would show that when defendant spanked her daughter, the child pulled away and accidentally fell against the table incurring an injury in the form of a lacerated liver which was the actual cause of her death.
 

 Dr. Stein was called to testify as the State’s fifth prosecution witness. Before he commenced his testimony, the defense made a motion in limine to exclude certain autopsy slides of Dr. Stein’s internal examination of the victim’s head and brain on the ground that they were highly prejudicial and that any injuries shown were not related to the cause of her death. One of the prosecutors represented to the trial court that Dr. Stein would testify that blunt trauma to the brain was the cause of death and based on that representation, the trial court denied the motion in limine and allowed the State to use all of the autopsy slides. After the jury was shown each of the autopsy slides of the victim, Dr. Stein stated that the cause of death was laceration of the liver due to a blunt trauma.
 

 The prosecutor then asked Dr. Stein the meaning of the term “manner of death.” The doctor replied that that was the “mode” of death which was either homicide, suicide, accidental, by natural causes, or undetermined. In response to the inquiry whether he had an opinion as to the manner of death of defendant’s child, Dr. Stein replied:
 

 “A. As I stated previously in my report, in the death certificate dated the 18th of July, a manner of death was undetermined.
 

 Q. Based on the material that you now have access to, do you wish to change that or do you have a different opinion ***?
 

 A. The material that I have access to, namely, the emergency room report whereby the physician has stated that *** Andrea Franklin was dead, and if I would have known that at the time of the autopsy my manner of death would have been homicide.”
 

 Following completion of Dr. Stein’s testimony, the defense moved for a mistrial on the grounds that the State tendered incomplete discovery of Dr. Stein’s statements. The defense attorney argued that throughout the entire pretrial discovery process, Dr. Stein’s opinion regarding the manner of death was that it was “undetermined.” This remained Dr. Stein’s position as late as December 11, 1981. Although the prosecutors subsequently talked to Dr. Stein and determined that he had changed his opinion regarding the manner of death, they refused to disclose this change to the defense. Defense counsel further asserted that on December 15, 1981, when the prosecutor asked defense counsel how he planned to perfect impeachment of the doctor, the State already knew Dr. Stein had changed his opinion as to the manner of death.
 

 The prosecutors argued against granting the defense motion for a mistrial. They acknowledged that on December 15, 1981, they were aware that based upon certain emergency room reports, Dr. Stein was going to change his initial opinion concerning the manner of death from “undetermined” to “homicide.” However, one of the prosecutors stated: “I don’t see any duty on our part to notify the defense of that. They had an opportunity to talk to Stein ***.” The prosecutors also claimed that defendant was not prejudiced by the State’s failure to disclose the change in Dr. Stein’s opinion concerning the child’s manner of death since the doctor on the record stated his reasons for the change and the defense attorney was able to cross-examine him on that point.
 

 In response, defense counsel claimed that the State’s failure to disclose the change in Dr. Stein’s testimony caused him to make an inaccurate opening statement to the jury and denied him the opportunity to adequately cross-examine the emergency room physician who had testified prior to Dr. Stein!
 

 The court stated:
 

 “[T]his Court feels that the failure of the State to reveal the additional information known to them prior to the beginning of this trial is extremely prejudicial to the defense, and the fact that they did not reveal it until after the party has been questioned and it’s far too late, I feel there is a very prejudicial effect on this trial, and there is a mistrial declared in this matter.”
 

 The trial judge then dismissed the jury, recused himself “from any further participation in this matter,” and transferred the case for reassignment and for a new trial. We note that the court made no findings of fact as to whether the prosecutors’ actions were intended to provoke the defense motion for a mistrial.
 

 The case was then assigned to Judge Dwight McKay for retrial. On February 24, 1982, the defense moved to dismiss the information and discharge the defendant on the ground that reprosecution was barred because the mistrial was declared due to prosecutorial misconduct. Defendant contended that the State was unprepared for trial and feared an acquittal. Defendant argued that the State’s concealment of the change in Dr. Stein’s opinion concerning the manner of death reflected that the prosecutors’ intent was either to provoke a mistrial or “to harass and prejudice the defendant by misrepresenting to the court certain things and it has been one misrepresentation after another up until the mistrial was declared.” In support of her contentions, defendant also calls attention to the State’s misrepresentation to the trial court regarding the necessity of showing to the jury all of the autopsy slides in light of the prosecutors’ inaccurate assertion that the injuries in the head region contributed to the cause of death.
 

 The State denied that it had intended to provoke a mistrial. The prosecutors argued that they could not be characterized as having concealed Dr. Stein’s testimony from the trier of fact since it was elicited on direct examination of Dr. Stein. They further claimed that “there was no bad faith on the part of the prosecution” underlying its inadequate compliance with discovery and that the “failure to disclose that information was an error on our part or negligence or inadvertence,” but that it was “not sufficient grounds to constitute bad faith on the part of the prosecution that would necessitate the granting of a motion to dismiss on the grounds of double jeopardy.”
 

 Judge McKay noted that the State was under a continuing duty to disclose Dr. Stein’s statement, due to both a direct court order and to Stipreme Court Rule 415 (87 Ill. 2d R. 415) and that the State’s failure to disclose was “material” and was the reason a mistrial was declared. Without any reference to the prosecutors’ intent, the court concluded that the defendant had been placed in double jeopardy and granted the motion to dismiss the information.
 

 On appeal, the State acknowledges that at the time the trial court dismissed the information, it was an established rule that a violation of the double jeopardy clause barred reprosecution where (1) the prosecution’s conduct which resulted in the mistrial was undertaken to harass or prejudice the defendant or (2) such conduct was intended to provoke a mistrial so as to give the prosecution a more favorable opportunity to convict the defendant at a second trial. (United States v. Dinitz (1976), 424 U.S. 600, 611, 47 L. Ed. 2d 267, 276, 96 S. Ct. 1075, 1081.) However, the State argues that on appeal we should apply the more stringent standard subsequently adopted by the United States Supreme Court in Oregon v. Kennedy (1982), 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083, concerning the effect of a successful defense motion for a mistrial in a criminal trial. The court held in Kennedy.
 

 “[T]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.” (456 U.S. 667, 679, 72 L. Ed. 2d 416, 427,102 S. Ct. 2083, 2091.)
 

 The State contends that in the instant case the record does not support a finding that the prosecutors intended to provoke defendant into moving for a mistrial. To the contrary, defendant argues that the prosecutors’ intent to provoke a mistrial can be inferred from their deliberate failure to disclose Dr. Stein’s statements despite a specific defense discovery request to disclose such statements and a direct order by the trial court to comply.
 

 The record reveals that prior to trial, the prosecutors were aware that Dr. Stein had changed his opinion concerning the manner of the child’s death to “homicide” and that they refused to disclose that information to defendant. The prosecutors thereby allowed defense counsel to make an inaccurate opening statement to the jury to the effect that Dr. Stem’s testimony would establish that the manner of death was “undetermined” and that the evidence would show the death was accidental. The prosecutors then called Dr. Stein as a witness and elicited on direct examination that he had changed his opinion concerning the manner of death from “undetermined” to “homicide.” Immediately following that testimony, defendant’s motion for a mistrial was granted.
 
 [2]
 

 In our judgment the appropriate standard to be applied herein is that propounded in Oregon v. Kennedy. In that case, however, the trial court had made a factual finding that the prosecution did not intend to provoke a mistrial. (456 U.S. 667, 669, 72 L. Ed. 2d 416, 427, 102 S. Ct. 2083, 2091.) In the instant case, the trial court made no such factual findings and we cannot without improper speculation determine from the record before us the intent underlying the prosecutors’ conduct in the case at bar.
 

 We therefore vacate the order dismissing the charges against defendant and remand this case to the circuit court for the purpose of making pertinent findings with respect to whether the prosecution in this instance intended to provoke defendant into moving for a mistrial. Should the court find such intent, the trial court should re-enter the order dismissing the charges against defendant; should the court find the. prosecution did not intend to provoke defendant into moving for a mistrial, the trial court should deny defendant’s motion.
 

 Order vacated and cause remanded with directions.
 

 STAMOS and HARTMAN, JJ, concur.
 

 [1]
 

 Because a mistrial was declared following the testimony of Dr. Stein, Mr. Lawrence was not called to testify at the trial.
 

 [2]
 

 We are constrained to observe that we deem the prosecution’s antics and actions in this case to be entirely improper. We caution the State against trifling with society’s right to prosecute those charged with the commission of crimes as well as against infringing upon the rights of an accused to a fair trial.