NO. 5-99-0420

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  St. Clair County.

)

)  No. 96-CF-1240

)

CARL TATE, )  Honorable

)  Jan V. Fiss,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

The rule of law handed down in 
Doyle v. Ohio
, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), has been with us since 1976.  Despite unrelenting change in criminal procedure over the past 25 years, its prohibition against comment on postarrest silence has endured.  
Doyle
, 426 U.S. at 617, 49 L. Ed. 2d at 97, 96 S. Ct. at 2244.  Hence, its teaching spans a course of time that encompasses the entire work history for most prosecutors, even those with long and notable careers like the prosecutor in charge of this case.

On April 5, 1999, a St. Clair County jury was sworn, and the defendant's trial on the charge of first-degree murder began.  The prosecutor rose to his feet and addressed the jury with opening remarks.  Among them was a comment about what happened when the defendant was taken to the police station.  He told the jury that the defendant was taken to the police department, where he exercised his right to remain silent "under what's called Miranda [
sic
] ***." 

The comment drew a prompt objection, followed by the defendant's request for a mistrial.  The prosecutor responded to the request:

"Judge, there's no way I can tell this jury how the parents–how the foster mother got [to the police station] and why DCFS [the Department of Children and Family Services] was called.  He obviously called and asked for DCFS to come and asked for his foster mom.  ***  If you want to strike [the reference to 
Miranda
], that's fine.  I just wanted to put it in context."

Thus, it appeared that the comment upon the defendant's postarrest silence was not delivered in ignorance of the law's ban on such a comment.  Nor did it appear to be an innocent slip of the tongue.  The prosecutor seemed to acknowledge a conscious decision to inform the jury that the defendant had exercised the right to remain silent because he felt that it would provide the jury with a better understanding of how and why the defendant's foster parent appeared at the police station and subsequently engaged in conversation with the defendant.  The prosecutor seemed to harbor a belief that 
Doyle
's prohibition against comment on postarrest silence could find an exception where the rule's violation could help to provide context for other events.    

Although the trial judge was not convinced that the comment on 
Miranda
 needed to be made, he decided to deny the defendant's motion for a mistrial.  Thereafter, he promptly admonished the jury to disregard the comment.  The trial continued.  The State called Mary Leflore to the witness stand.  She was the defendant's foster parent.  She was a key witness for the prosecution, as she was present during the shooting that led to this murder charge.  Her direct and cross-examination completed the trial's first day.  The next morning, when the trial judge asked if the State was ready to proceed, the following colloquy occurred in chambers:

"[Assistant State's Attorney]: Judge, I wanted to bring to the Court's attention[–]***  I've done some research on *** the comments that I made in opening statement regarding the defendant's invoking his Miranda rights.  

It appears, your Honor, *** that my statements were, in fact, prosecutorial error, *** and we would end up having to retry this case again [
sic
].

* * *

I would ask the Court to reconsider [defense counsel's] motion for mistrial at this time based upon *** prosecutorial error on my part[.]  *** [T]he appellate court would reverse that and we would be back here again having to retry this case.

So I would ask the Court to reconsider his motion for mistrial at this time.

* * *

[Defense counsel]: Your Honor, is the State making a motion to mistry this case?

[Assistant State's Attorney]: No, your Honor, I'm asking the Court to reconsider [defense counsel's] motion for mistrial.

* * *

I'm saying, Judge, that it was an error on my part, it was not misconduct by any stretch of the imagination[;] I did not intentionally do that[;] I had no reason to sabotage my case or sabotage this case to try to get a mistrial.

Obviously, *** I was trying to get the link, the reason why Mary Leflore talked to the defendant.  It was error on my part to do so.  I'm coming to this Court as an officer of the Court and telling the Court that it was prosecutorial error, it is going to get reversed on appeal, and [defense counsel] moved for a mistrial, and the Court denied that motion, and I'm asking *** the Court to reconsider his motion for mistrial.  I'm not asking for one[;] I'm asking the Court to reconsider his motion, or the Court 
sua sponte
 can ask for his own mistrial.

* * *

[Defense counsel]: This is coming back.  I knew this–I knew this was going to happen this morning[.] [L]ast night when I was at the ball game, I sat there with my old man[,] and he said there isn't an appellate court justice in this state that will allow that to stand.

[Assistant State's Attorney]: I agree, Judge.  It's going to come back on reversal.  I'm asking the Court to reconsider [defense counsel's] motion for mistrial.

THE COURT: Anything else–

[Defense counsel]: Judge, *** to suggest that it was anything less than an intentional act, I mean, you know, was it an accident?  I mean he knows what he is saying.  He's responsible.  He's tried a bunch of cases.  I'm not saying that you intended to put error in, but you intended to say what you said.  Was it an accident?

* * *

[Assistant State's Attorney]: Judge, it was an accident, I did not intend to say that, it slipped, it was an error, and the only reason it came out, Judge, is because I was trying to link up Mary Leflore talking to the defendant.

* * *

There was no reason in an opening statement for me to do this to my case. [T]he Court *** has heard the opening and heard evidence[;] it's a relatively strong case for the State[.]  ***  [T]here's no reason for me to do that in opening statement[.] [T]here was nothing that was detrimental to the People at that stage, and additionally[,] judge, there was no bad faith, and I'll take an oath, and I'll go on the record if the Court wants me to do that, and I will say that.

[Defense counsel]: I'm not asking you to do that ***.

[Assistant State's Attorney]: I'm telling the Court it was not intentional[;] it was not done in bad faith.  I would ask the Court to make a finding that it was, in fact, prosecutorial error, as opposed to prosecutorial misconduct or overreaching, and, as I said, I will–[defense counsel] had every right to ask for a mistrial[;] the Court should have granted it[;] I should have conceded the motion for mistrial at that time.  It was error on my part, and like I said, I want to be fair to the defendant and he's got every right *** to have a different jury.

If he wants a mistrial, again, I think the Court should grant the mistrial[,] and I would ask you to reconsider his motion for one.

[Defense counsel]: The thing that the State seems to be overlooking in this regard is *** the procedure that's been employed[.]  [D]uring the last 24 hours the State has had the benefit of eliciting the testimony of Mary Leflore and seeing how she would perform in the presence of the jury.

I think we all agree that *** you could ask her if she had ten fingers and ten toes, she would have had to have counted them first.

* * *

My point is this, your Honor, to have a witness go in the dumper on you and then say oh, well, we better start again, we opposed the motion for mistrial yesterday, our witness goes to shit on us, and, you know, we'll come in and concede error the next day.  I would ask that the Court construe this as the State now making a motion to mistry the case.

It really doesn't matter procedurally, because this will be the subject of a motion to dismiss based on double jeopardy grounds, which I will be preparing if the Court grants the motion, which I think it has to do.

* * *

THE COURT: *** We're all honorable men here, and *** the Court finds that there was not any prosecutorial misconduct or overreaching or any bad faith, and I don't think that the–I don't believe that defense counsel is suggesting that.  That would be outrageous[,] and I don't want it in my courtroom unless there is some solid evidence for that.  But I don't believe that [defense counsel] is saying that to begin with.

[Defense counsel]: No, that's not what I'm saying, Judge[.]  I'm saying that the effect is the same.

THE COURT: *** I don't have any misgivings as to any strategy about having Mary Leflore, and what she had to say and all this stuff, or that there's any nexus between that and what occurred as far as this Mirandized statement is concerned.  But again, I don't think the defense is suggesting that either. 

So, we're all friends here[;] I will reconsider or 
sua sponte
[;] I don't know that it makes a difference–

[Assistant State's Attorney]: I'm assuming *** that [defense counsel] still wishes the mistrial.  Obviously, it's his right to if he wants to withdraw that[.]  I'm not going to suggest that[;] that's up to him ***.

THE COURT: We'll beat a dead horse and nobody wants to do that.  So I will grant the mistrial."

The trial ended.  Thereafter, the defendant filed a motion to dismiss.  It sought to bar further proceedings based upon the former-jeopardy clauses of the United States and Illinois Constitutions.  U.S. Const., amend. V; Ill. Const. 1970, art. I, §10.  The trial judge denied the motion, and the defendant brought this interlocutory appeal.

The defendant was clearly placed in jeopardy for purposes of constitutional protection.  His jury was sworn and a witness testified in the aborted trial on the charge of first-degree murder.  The inquiry raised by this appeal is whether a retrial would place the defendant twice in jeopardy for the same offense, a circumstance prohibited by the former-jeopardy clauses of the United States and Illinois Constitutions.  The defendant suggests that we should approach the inquiry in either of two divergent ways.  

First, the defendant argues that we can construe the State's motion as a motion for mistrial rather than a motion to reconsider the trial judge's earlier denial of the defendant's motion for mistrial.  Viewed as a motion for mistrial by the State rather than by the defendant, we would look to the reasons behind the State's request in order to determine whether they support a finding of manifest necessity.  In this regard, the defendant correctly points out that the error did not necessarily call for an automatic reversal.  See 
People v. Patterson
, 154 Ill. 2d 414, 466, 610 N.E.2d 16, 40 (1992).  In addition, the defendant correctly argues that a prosecutor cannot commit an error of this magnitude and rely upon it to support the State's request to prematurely unseat a jury that the defendant desires.  See 
People v. Reimnitz
, 97 Ill. App. 3d 946, 947-48, 423 N.E.2d 934, 935 (1981).  A prosecutor cannot create manifest necessity by committing mistakes that harm the defendant and subsequently use those mistakes as a basis for depriving the defendant of a preferred, albeit tainted, jury, provided that the defendant opposes the trial's untimely end.   

Thus, the defendant maintains that the State's motion was unsupported by a manifest necessity requisite to the deprivation of a trial to a verdict before the jury of the defendant's choice.  We are asked to shield the defendant from being placed in jeopardy again and to bar a retrial for the same offense prosecuted during the aborted trial.   

Second, the defendant approaches the question from the perspective of a State motion to reconsider the defendant's earlier effort to end the trial.  If we find that it was the defendant's motion for mistrial that the trial judge granted, the defendant contends that the motion constituted action he had to take because of the prosecutor's deliberate misdeed.  The prosecutor's deliberate violation of the law's command left the defendant with no choice but to request a mistrial.  The defendant maintains that the mistrial motion was the result of  prosecutorial overreaching that provoked such action.  

Thus, the defendant claims that even though he was the party who sought to end the trial prior to a verdict, his reaction to prosecutorial misconduct should not lift the constitutional shield.  We are asked to bar a retrial on this converse basis. 

Initially, we must examine whether the trial judge declared a mistrial at the behest of the defendant or the behest of the State.  The trial judge's order creates confusion that allows the defendant to maintain several arguments based upon the belief that the trial judge construed the State's request as the State's motion for mistrial.  The order contains a finding that there was manifest necessity to end the trial.  However, at the same time, the order declares the mistrial based upon the defendant's motion.  The existence of manifest necessity is requisite only where the State requests a mistrial that the defendant opposes.  Where the defendant seeks a mistrial, there is no need for such a finding.  We are left to resolve the question of whose motion for mistrial the trial judge thought he granted.  

Since the State was clearly promoting the trial's premature end, defense counsel asked the trial judge to recast the State's request to reconsider an earlier ruling on the defendant's motion for mistrial into a new motion for mistrial tendered by the State.  However, the prosecutor made it abundantly clear that the State was not moving for a mistrial.  The State was asking the trial judge to end the trial prematurely only if that was in fact what the defendant wanted the trial judge to do.  To be sure, the State wanted the trial to end if the defendant persisted in that desire, based upon a mistaken belief that a reversal would be inevitable.  But when the prosecutor indicated that his request was premised upon the assumption that defense counsel still wanted a mistrial, and the prosecutor pointed out that the defendant could withdraw his motion and proceed, defense counsel responded with silence.  In fact, the only direction offered by defense counsel was to express his belief that the trial judge had no choice but to grant the State's motion to reconsider his earlier ruling. 

Since the only motion for mistrial that the trial judge had before him was a defense motion for mistrial, we need not address the arguments premised upon a view that the State had moved for the mistrial.  Nevertheless, we note that those arguments assume a fact clearly not in existence–that the defendant opposed the trial's untimely end.  Even if we could somehow recast the State's request into a motion for a mistrial tendered by the State, we would have no need to examine the arguments.  During the entire discussion that preceded the trial judge's decision to end the trial, not one word was offered in opposition to a mistrial.  There were only two pertinent comments directed at the State's request.  The first was an unanswered invitation for the trial judge to construe the motion as the State's motion for mistrial.  The second was the offer of an opinion that the trial judge had no choice but to grant the State's motion to reconsider.  A defendant who consents to the State's motion for mistrial and who does not register his opposition to it cannot raise jeopardy's shield from a retrial unless there is evidence of prosecutorial overreaching.  
Oregon v. Kennedy
, 456 U.S. 667, 676, 72 L. Ed. 2d 416, 424-25, 102 S. Ct. 2083, 2089 (1982).

Thus, we address the defendant's argument that 
his
 motion for mistrial was the product of prosecutorial overreaching. 

In 
Oregon v. Kennedy
, the Supreme Court repudiated any former jeopardy test based solely upon prosecutorial overreaching unaccompanied by an intent on the part of the prosecutor to provoke the defendant into moving for a mistrial.  
Kennedy
, 456 U.S. at 675, 72 L. Ed. 2d at 424, 102 S. Ct. at 2089.  When a mistrial is declared upon a defendant's motion, a retrial is barred only if "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial."  
Kennedy
, 456 U.S. at 679, 72 L. Ed. 2d at 427, 102 S. Ct. at 2091.  Thus, the question of whether the prosecutor's improper opening remark constituted prosecutorial overreaching turns upon whether he 
made the comment with the intent to provoke the defendant's motion for mistrial
.

A prosecutor's intent can be inferred from the objective facts and circumstances of the case.  
Kennedy
, 456 U.S. at 675, 72 L. Ed. 2d at 424, 102 S. Ct. at 2089.  It calls for a factual determination from the trial court that will not be overturned absent an abuse of discretion.  
People v. Franklin
, 159 Ill. App. 3d 56, 61, 512 N.E.2d 40, 43 (1987).  As a general rule, defendants who request or consent to a mistrial are presumed to have deliberately elected to forgo a determination of guilt or innocence before the jury seated at that time.  
Kennedy
, 456 U.S. at 676, 72 L. Ed. 2d at 424-25, 102 S. Ct. at 2089.

Here, the trial judge felt that the prosecutor acted without ill design.  After declaring that "we are all honorable men," he found an absence of intentional misconduct, bad faith, or overreaching.  Moreover, he elicited a concession from defense counsel that there was no assertion to the contrary.  Defense counsel was not claiming that the prosecutor's improper remark was uttered in bad faith with the intent to provoke a mistrial.  Rather, he was claiming that the remark might as well have been uttered in bad faith, for "the effect [was] the same."

This position was clarified when defense counsel addressed his motion to dismiss.  In the argument on the motion, counsel pointed out that he was pleased with the course of the proceedings.  At the time of the State's request to reconsider a mistrial, he wanted to proceed to a verdict.  He wanted the opportunity to conclude the trial before a jury that he valued and a jury that had heard the testimony offered.  This opportunity was lost by virtue of the State's turnabout on the question of a mistrial.  He assigned a motive for the prosecutor's change of heart.  The prosecutor had observed the weakness of a crucial witness and decided it best to take advantage of his own misdeed by seeking the trial's end.  

Key to the argument is the assumption that the defendant was no longer seeking a mistrial.  Defense counsel commented: "[W]ith a jury that we like, having just blistered their only witness, and she's coming back for some more fun, 
we were not the party looking to terminate the proceeding
.  The State was."  (Emphasis added.)  This comment overlooks  the problem that defense counsel's motion for mistrial created.  When the State asked the trial judge to revisit his ruling, it put the defendant's motion for mistrial back into play.  The defendant could not rely upon the earlier ruling as an end to the matter.  The trial judge's refusal to declare a mistrial when asked did not put the defendant's stated desire to rest.

The trial judge's denial of the defendant's motion did not foreclose his power to review the decision and change his mind.  A trial judge can reconsider such a ruling at any time prior to the entry of final judgment.  
People v. Mink
, 141 Ill. 2d 163, 171, 565 N.E.2d 975, 978 (1990).  When the defendant moved for a mistrial, he obviously wanted the trial to end.  He wanted a different jury untainted by the prosecutor's improper remark.  However, if the trial's course proved favorable and he changed his mind about the jury's worth, he needed to step forward when the State invited the trial judge to reverse himself.  If the defendant wanted the trial to go to a verdict before the selected jury, it was incumbent upon the defendant to say so.  And he needed to make his desire known before, rather than after, the trial judge reconsidered his ruling.

When the State asked the trial judge to reconsider, the defendant was presented with a Hobson's choice.  Notwithstanding, it was a choice he had to make.  Until the prosecutor awoke to the magnitude of the error created by his comment and asked the trial court to grant the defendant's motion, the defendant had preserved a viable issue for appeal that provided protection against an adverse verdict.  Defense counsel no doubt wanted to maintain that advantage.  He did not want to subject the error to a claim of waiver by withdrawing his motion.  However, the State's turnabout and support for a mistrial forced the issue.  The defendant could not allow the trial judge to reconsider a defense motion for mistrial–he could not advise the trial judge that he had no choice but to reverse himself by granting the earlier request–without being the party who sought the termination of the proceedings.  Rather than ask the trial judge to view the State's request as something other than it was, he needed to withdraw his motion and remove the judge's power to act upon it.     

The question of whether the trial judge abused his discretion by finding an absence of intent to provoke the mistrial is a question measured by examining the state of affairs at that point in time when the prosecutor injected the error into the trial.  The timing of the improper remark is important.  The prosecutor did not see his witness testify before he commented upon postarrest silence.  Even if he subsequently observed a poor performance from a key witness and decided to take advantage of the defendant's request for that reason, the tactical use of the defendant's earlier motion did not, and could not, provoke the defendant into seeking, or persisting in, the trial's untimely end.  

There is nothing in this record to suggest a motive to provoke a mistrial.  The prosecutor's claim that he had no reason to sabotage the trial by commenting upon postarrest silence during opening statement finds no counter in any of the proceedings that led up to the improper remark.  While the prosecutor may have developed a reason to cause the trial's end after he heard his witness testify, it cannot be assigned to his thinking during opening statement.  Moreover, if the prosecutor truly wanted to avoid a trial to verdict because of the witness's performance, he did a curious thing.  He invited the defendant to withdraw his motion if the defendant did not want to start the trial anew.  

We note that the trial judge was never presented with a claim that the prosecutor's remark was uttered with the intent to goad the defendant into moving for a mistrial.  It is only on appeal that the defendant offers a reason why the prosecutor would have wanted to provoke a mistrial by committing error during opening statement.  On appeal, the defendant abandons the notion that the prosecutor commented upon postarrest silence in order to  avoid the consequence of a witness's poor performance.  Obviously,  no witness had testified when he made the improper remark.  Now, the defendant concludes that the comment upon postarrest silence was the prosecutor's way of goading a mistrial in order to escape his lack of preparation for the trial.  This conclusion is reached by making two assertions that are unsupported by the record.  First, the defendant contends that the State was without an expert witness to counter the defendant's intoxication defense.  Second, he contends that the prosecutor was unfamiliar with the facts of his case, having erroneously stated the number of wounds that the victim sustained. 

The record belies such a conclusion.  The record reveals that the prosecutor was prepared for the trial.  His opening statement displays familiarity with the facts of his case.  His examination of Mary Leflore demonstrates familiarity with what she was expected to say and with what she had said previously. 

In addition, the defendant's claims are misleading.  While it is correct that the State commenced the trial unarmed with expert opinion to counter the defendant's expert, the State had an expert witness.  In fact, when the defendant first tendered the intoxication defense, on the day the trial was originally scheduled to start, the trial was postponed for two months to enable the State to examine the defendant.  Prior to the trial, the State raised the defendant's refusal to cooperate with its expert as the reason that an examination had not occurred.  A motion to bar the intoxication defense because of the defendant's refusal to cooperate was pending when the trial began.  A further postponement of the trial was not likely to arm the State with evidence gathered from an examination of the defendant.   

During opening statement, the  prosecutor told the jury that he expected a pathologist to testify that the victim had three entrance and three exit wounds as a result of being shot by the defendant.  The only information in the record contradicting that statement is a statement from defense counsel that the victim actually sustained a different number of wounds.  As the State correctly points out, the defendant and his counsel have no monopoly on the facts.  We cannot presume that defense counsel's statement about the number of wounds is accurate while the prosecutor's statement about the number of wounds is inaccurate.  In any event, even if the prosecutor misstated the contents of the pathologist's report, an isolated misstatement about the proofs does not show that the prosecutor was unprepared for the trial and intended to provoke the defendant into moving for a mistrial because of that fact. 

Finally, if the prosecutor's improper opening remark was designed as a cure for his state of unpreparedness for the trial, we would have expected a different reaction once the cure was obtained.  If a mistrial was a way to obtain more time to properly prepare, the prosecutor would not have asked the trial judge to immediately impanel another jury.  We note that after the mistrial was declared, the prosecutor wanted to proceed immediately to trial, without expert opinion to counter the intoxication defense and without more time to better grasp the facts of his case.

We cannot find an abuse of discretion in the trial judge's determination that the prosecutor acted without an intent to provoke a mistrial.  The record clearly supports a finding that the prosecutor did not utter the improper remark in order to provoke a defense motion to abort the trial.  Accordingly, the mistrial did not deprive the defendant of rights protected under the former-jeopardy clauses of our federal and state constitutions, and a retrial is not barred. 

We remand for a trial.  However, we would caution that the rule of law enunciated in 
Doyle
 finds no exception in a prosecutor's ability to link postarrest silence to other events.  We trust that whoever prosecutes this case can fashion another way to inform the jury that a foster parent was summoned to the police station, without commenting upon the defendant's exercise of a constitutional right.    

Affirmed; cause remanded.  

GOLDENHERSH, P.J., and HOPKINS, J., concur.