FOURTH DIVISION
NOVEMBER 22, 2006

Nos. 1-05-0655 and 1-05-0656 (Consolidated)

| | | |
|---|---|---|
| THE PEOPLE *ex rel.* THE CITY OF CHICAGO, a Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | |
| CALVIN HOLLINS, JR., and DWAIN JOHANN KYLES, | ) ) ) | Honorable Daniel J. Lynch, |
| Respondents-Appellants. | ) | Judge Presiding. |

JUSTICE CAMPBELL delivered the opinion of the court:

This is a consolidated, interlocutory appeal. Respondents, Dwain J. Kyles and Calvin Hollins, Jr., appeal from orders of the circuit court of Cook County denying their separate motions to dismiss an indirect criminal contempt proceeding brought by petitioner, The City of Chicago (City), on the grounds of double jeopardy, pursuant to Illinois Supreme Court Rule 604(f). 188 Ill. 2d  R. 604(f). On appeal, respondents contend that double jeopardy bars the City's action for violations of the City of Chicago municipal building code where the City deliberately caused a mistrial. Hollins argues separately that his retrial is barred by judicial misconduct. Kyles raises the additional contention the case should be transferred to a different trial judge pursuant to Supreme Court Rule 63 (C)(1)(a) on the grounds that the trial judge possessed personal knowledge of disputed evidentiary facts. For the following reasons, we

affirm the judgment of the trial court and remand this matter to the circuit court for reassignment to another circuit court judge.

The record reveals the following relevant facts. In 2002, respondents conducted a restaurant and nightclub business in a two-story building located at 2347 South Michigan Avenue, Chicago. The first floor housed Epitome restaurant and, on the second floor, respondents operated a nightclub called Epitome 2 or "E2." E2 consisted of a main dance floor, two bar areas and a mezzanine level with several "VIP" rooms. The mezzanine level and VIP rooms were suspended by trusses[1] connected to the ceiling of the building.

On June 18, 2002 , the City filed a building code enforcement action in housing court against the owner of the building. The operator of the restaurant and nightclub, Le Mirage, Inc., voluntarily allowed itself to be impleaded into the action. Respondent Kyles was named as Le Mirage's sole shareholder, and respondent Hollins was named as Kyle's "silent partner." The City sought an injunction requiring respondents to correct 11 code violations, alleging that the VIP area had been built without proper permits and that the partitions could not support its weight, creating dangerous conditions on the second floor.

---

[1] In architecture, a structural framework of wood or metal based on a triangular system, used to span, reinforce, or support walls, ceilings, piers, or beams. Dictionary.com. *Dictionary.com Unabridged (v 1.0.1)*, Based on the Random House Unabridged Dictionary, © Random House, Inc. 2006. http://dictionary.reference.com/browse/truss (accessed: November 01, 2006).

On July 19, 2002, the parties entered their first appearance before the court, Judge Daniel Lynch presiding. Edward J. Morris appeared on behalf of the owner of the property, Lesly Motors. Le Mirage's regular attorney, Thomas Royce, was on trial in another courtroom and could not appear; Bradley Prendergast appeared in his stead and waived service of summons on behalf of Le Mirage. Assistant corporation counsel Demetris Kare presented what he described as an agreed order that Le Mirage would not occupy the second-floor VIP rooms.

Judge Lynch then heard testimony from the City's building inspector, Margarite Shahi. Shahi testified that the entire second floor was dangerous due to, *inter alia*, the weight of the VIP rooms suspended from the bow truss roof and that substandard partitions were used to build the VIP rooms. At the conclusion of the testimony, the trial court stated: "Your agreement is no occupancy of the second floor. You have to keep it vacant."

Judge Lynch then wrote the following note on the half sheet, the cover of the trial court's case folder: "BA Mirage will not occupy 2d Floor VIP rooms."

After the hearing, Prendergast sent a letter to Royce, advising him as to the court proceedings as follows:

> "The city inspector testified that the sky-boxes on the second floor
> overlooking the dance floor are dangerous and hazardous because
> they are suspended from the trust-roof[2] [sic] * * * . The judge
> entered an Order that the second floor mezzanine not be used, the
> VIP room, until there is a hearing. As a result, they are now

---

[2]Meaning "truss" roof.

'vacant' important persons rooms. That order will remain in effect

until August 9th."

Prendergast received a written order, signed by Judge Lynch, several days after the hearing that provided as follows: "Mandatory order not to occupy 2d floor." Prendergast forwarded this order to Royce.

The order described above was renewed on subsequent court dates. On August 9, 2002, Kare appeared in court on behalf of the City and Royce appeared on behalf of respondents as well as for the owner of the building, Lesly Motors. The City asked that the order not to occupy be continued to September 6, 2002, and requested an order of interior inspection. Royce stated that respondents had "taken steps" to rectify the conditions on the second floor, including drafting plans and applying for construction permits. The court entered an order stating: "Mandatory order not to occupy 2nd floor of subject premises."

On September 6, 2002, the court entered an order stating: "All previous orders remain in full force and effect."

At a hearing on October 25, 2002, Kyles agreed to continue the prior order not to occupy the second floor, mezzanine and VIP rooms. The trial court's order of that date provided: "[A]ll prior orders to remain in full force and effect."

According to the record, respondents continued to operate the E2 nightclub on the second floor of the building despite entry of the above-described court orders.

Subsequently, during E2 club hours in the early morning of February 17, 2003, a fight ensued on the dance floor. Security guards utilized pepper spay to break up the altercation and the remaining patrons of the club panicked and fled for the doors. Tragically, in the rush to escape the smog of pepper spray, the patrons manifested into a stampede and crowded into a

narrow staircase to reach the first-floor exit. Twenty-one patrons were crushed and killed in the charge and fifty other patrons were injured.

The following day, February 18, 2003, the City filed a petition for adjudication of indirect criminal contempt against Le Mirage and Kyles. The City twice amended the petition; first to add Hollins, then to omit Le Mirage. Respondents requested a jury trial.

On January 23, 2004, Kyles and Hollins each filed the first of multiple motions requesting that Judge Lynch recuse himself and allow another judge to preside over the trial. Respondents contended, *inter alia*, that recusal was required because the scope of the trial court's order was in dispute and the trial judge was a potential witness for the defense regarding the intended meaning of the order. Respondents argued that Judge Lynch had "personal knowledge" regarding what happened in court on the day the original order was entered . Respondents argued that the content of the court file's half sheet suggested that the trial court intended to close *only* the VIP rooms and mezzanine, not the entire second floor, even though the order itself did not make this distinction. The trial court denied respondents' requests to recuse itself.

On December 8, 2004, Kyles filed a motion in *limine* to preclude the City from introducing a transcript dated September 6, 2002, and an order entered that day striking a motion Le Mirage filed to vacate the order of July 19. Neither the actual motion nor any copy of the stricken motion could be located. Kyles noted that Judge Lynch once again wrote on the half sheet an entry that supported his theory that Judge Lynch intended to close only the second-floor VIP area and not the entire nightclub: "D Mirage's motion to vacate 2d fl. VIP vacate order stricken."

Judge Lynch stated that Kyles could not use the half sheet as proof of anything, but stated that he would entertain the idea that the half sheet might be admissible for the limited purpose of

its effect on the respondents.  In response to the City's protests that the half sheet was not the order, Judge Lynch confirmed:  "That's not the law.  No one will say that.  Half sheet is not an order."  Judge Lynch then denied respondents' last motion requesting his recusal.

The parties selected a jury over the course of three days.  During jury selection, Kyles and Hollins charged that the City's use of a peremptory challenge to strike an African-American male from the jury violated Batson v. Kentucky, 476 U.S. 79, 90 L. Ed. 2d 69, 106 L. Ed. 2d 1712 (1986).  The trial court accepted the City's race-neutral explanation and denied respondents' charge.  Thereafter, the City brought a Batson challenge to Hollins' use of his third peremptory to strike a sixth white male from the jury.  The trial court accepted Hollins' race-neutral explanation and denied the City's challenge.

Prior to opening statements, the trial court reiterated its earlier ruling that the half sheet could be discussed during the testimony of respondents' witness, Thomas Royce, the attorney for Le Mirage, but that use of the half sheet would be relevant only for the limited purpose of its effect on Royce's mental state and ultimately the respondents' mental states.  The trial court cautioned that any proceedings held prior to entry of the court's orders were irrelevant: respondents were obligated to follow the court's orders, even if issued erroneously.  Counsel for both parties discussed which exhibits they intended to use during opening statements and Kyle's counsel declared his intent to use the half sheet.

Trial commenced on February 1, 2005.  About 15 minutes into the City's opening statement, counsel for the City remarked as follows:

"Now, the defendants are going to try to confuse you by

stating that there were handwritten notes made by the Court on the

jacket of the judge's file.  This jacket is commonly referred to as a

-6-

> half sheet. The defense will try to say that those notes constitute an order of the Court, so that in fact, in essence, there were two orders."

Kyles and Hollins immediately moved for a mistrial based on the above remarks. Respondents argued that the remarks improperly implied that the respondents would testify, when they did not need to put on a defense at all in a criminal proceeding, and thereby improperly shifted the burden of proof. Counsel for the City responded that the half sheet was an issue that would be discussed in the case and that an instruction would be sufficient to cure any error. The trial court granted respondents' motions for mistrial, finding that given the presumption of innocence, the respondents did not need to put on a defense at all, and petitioner's counsel improperly commented on what the defense would be:

> "These remarks do strike at the defendants' case at its core. And to suggest to the jury that the defendants would in essence be claiming there were two orders, I find particularly troubling.
>
> "I don't recall the defendants ever explicitly stating through the course of over a year and a half of testimony that is, in fact, what they would maintain. There were times when they were calling for myself, the Judge, to recuse myself so I could testify as to the mental processes that I went through to come up with rulings and decisions in this case. And I pointed out to them well-established law that that was just not the law.
>
> "But they have never explicitly characterized this case as involving a claim that, in fact the Court had issued two orders. I

-7-

> had said all along that the order is the order, the half sheet is the half sheet. Everyone knows what the order is. Everyone knows what the half sheet is at least with respect to the attorneys who were before the Court."

Hollins' counsel moved for a rule to show cause why the respondents wasted time and resources picking a jury. The trial court denied the motion, finding nothing in the record that indicated that the conduct of petitioner's counsel was "the product of bad faith or an intentional act on the part of the City to prompt or provoke a mistrial."

Respondents moved to dismiss the proceeding on the ground that double jeopardy barred their retrial. The trial court reviewed the briefs and affidavits of the parties on this motion. After oral argument, but without conducting a formal hearing, the trial court denied the motions to dismiss, finding that the City did not intend to provoke a mistrial by the remarks during the opening statement. The trial court concluded that there was more than enough evidence to allow the court to determine whether the City intended to provoke a mistrial without requiring the City's counsel to testify on the witness stand.

Regarding its determination of the City's "intent," the trial court relied on its observations of the demeanor of the City's trial team after the mistrial, which the trial court characterized as "surprised" and "uncomfortable." These characterizations were indications to the trial court that the City had, in fact, not been hoping that respondents would move for a mistrial. The trial court also noted that the City had argued that a mistrial was inappropriate under the circumstances, further suggesting that the City did not want a mistrial. The trial court concluded that the City had come prepared and ready to commence trial, demonstrating that the City had no motivation to provoke a mistrial for purposes of delay, and that the error occurred prior to the introduction of

any evidence whatsoever, negating any fear that the City had previewed respondents' case with the intent to provoke a mistrial.

The trial court rejected respondents' argument that the City was dissatisfied with the final jury selection, as evidenced by the <u>Batson</u> challenge, and therefore intended to provoke a mistrial. The trial court construed the <u>Batson</u> challenges as directed "to the court of public opinion," or to getting "under * * * [the] skin" of the opposing party rather than relevant to the legal claims raised. The trial court observed that while the City could have been dissatisfied with the actions of respondents during the course of jury selection, the City did not indicate any dissatisfaction with the jury as a whole, especially since the City had not complained about the jury after the trial court denied the <u>Batson</u> challenge. In fact, the trial court noted, the City accepted the jury without using four of its available peremptory challenges. The trial court rejected the respondents' assertion that a comment made by an attorney for the City after the mistrial demonstrated dissatisfaction with the jury and therefore motivation to provoke a mistrial.

The trial court further rejected respondents' contention that the considerable experience of the City's trial team required a finding that the opening statement could only have been intended to provoke a mistrial. The court opined that the City's attorney who presented the opening statement "merely attempted to anticipate" what the respondents would present as their defense since during the course of the proceedings respondents suggested they would raise that defense. Unfortunately, the trial court concluded, the result of the City's anticipation was improper.

Respondents filed timely interlocutory appeals which were consolidated on appeal.

OPINION

On appeal, respondents contend that the trial court erred in denying their respective motions to dismiss the case on the grounds of double jeopardy. Both Kyles and Hollins contend

that double jeopardy bars their retrial because the City intended to provoke their mistrial motions. Respondents further contend that the trial court was required to conduct a hearing to determine the issue of the City's intent. Separately, Hollins contends that Illinois's double jeopardy clause is broader than its federal counterpart and that judicial overreaching bars his retrial.

## I. DOUBLE JEOPARDY

Our jurisdiction over this matter is pursuant to Illinois Supreme Court Rule 604(f). 188 Ill. 2d R. 604(f). The scope of review of an order in a Rule 604(f) appeal is limited to a former jeopardy analysis and does not extend to a review of alleged errors which could not independently form the basis for appellate jurisdiction under Rule 604(f). People v. Stefan, 208 Ill. App. 3d 205, 567 N.E.2d 18 (1991), *rev'd on other grounds*, 146 Ill. 2d 324, 586 N.E.2d 1239 (1992). We therefore lack jurisdiction to review respondents' contentions regarding anything beyond double jeopardy.

The double jeopardy clause of the fifth amendment to the United States Constitution prevents a criminal defendant from being prosecuted twice for the same offense. U.S. Const., amend. V; Oregon v. Kennedy, 456 U.S. 667, 671, 72 L. Ed. 2d 416, 422, 102 S. Ct. 2083, 2087 (1982). The Illinois Constitution contains a similar provision. Ill. Const. 1970, art. I, §10. Double jeopardy, however, "does not offer a guaranty to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." Kennedy, 456 U.S. at 672, 72 L. Ed.2d at 422, 102 S. Ct. at 2087. Rather, where a trial ends in a mistrial as the result of a motion brought by the defendant, the defendant's election to terminate the criminal proceedings forgoes his or her right to have a decision rendered by the first trier of fact, making retrial permissible. Kennedy, 456 U.S. at 672-73, 72 L. Ed. 2d at 422-23, 102 S. Ct. at 2088; People v. Nelson, 193 Ill. 2d 216, 220-21, 737 N.E.2d 632 (2000).

A limited exception to the rule stated above exists where the prosecutor intended to provoke the defendant to move for a mistrial. Kennedy, 456 U.S. at 673, 72 L. Ed. 2d at 423, 102 S. Ct. at 2088; Nelson, 193 Ill. 2d at 221. Both the United States Supreme Court and the Illinois Supreme Court have explicitly rejected a broader interpretation of double jeopardy that would bar retrial in the event of prosecutorial bad faith, overreaching or intent to harass the defendant. Kennedy, 456 U.S. at 674, 72 L. Ed. 2d at 424, 102 S. Ct. at 2088-89; Nelson, 193 Ill. 2d at 221. These courts have determined that even if the prosecutor's conduct could be deemed harassment or overreaching, and even if the prosecutor intended to commit the conduct that precipitated the mistrial, such conduct will not bar retrial unless the prosecutor's actual intent was to "goad" the defendant into moving for a mistrial. Kennedy, 456 U.S. at 675-76, 72 L. Ed.2d at 424, 102 S. Ct. at 2089; Nelson, 193 Ill. 2d at 221. To apply this "narrow" exception, the trial court must examine the "objective facts and circumstances" surrounding the prosecutor's conduct and make a "finding of fact" regarding the prosecutor's intent. Kennedy, 456 U.S. at 673, 675, 72 L. Ed. 2d at 423-24, 102 S. Ct. at 2088-89.

The trial court is in a better position to decide the factual question of a prosecutor's intent. Therefore, this court will not overturn the factual findings of the trial court unless they are against the manifest weight of the evidence demonstrating an abuse of discretion. See, *e.g.*, People v. Campos, 349 Ill. App. 3d 172, 174-75, 737 N.E.2d 632 (2004); People v. Tate, 317 Ill. App. 3d 272, 279, 739 N.E.2d 617 (2000). An abuse of discretion occurs when the trial court's decision is "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." People v. Ortega, 209 Ill. 2d 354, 359, 808 N.E.2d 496 (2004).

Respondents initially argue that the City intentionally provoked a mistrial because it was unhappy with the jury selection and the loss of its Batson challenge.

Respondents misconstrue the nature of a <u>Batson</u> challenge. Under <u>Batson</u>, both the prosecutor and the defense are prohibited from purposely discriminating on grounds of race in their use of peremptory challenges. <u>Georgia v. McCollum</u>, 505 U.S. 42, 59, 120 L. Ed. 2d 33, 51 112 S. Ct. 2348, 2359 (1992); <u>Batson</u>, 476 U.S. at 89, 90 L. Ed. 2d at 83, 106 S. Ct. at 1719 (1986). A <u>Batson</u> challenge is a claim addressing the fairness of the jury selection process, to ensure that there is no racial bias. A challenge to a strike does not mean that the challenging party necessarily wanted that particular juror on the jury because of that juror's race.

Respondents further argue that as experienced attorneys, the City's counsel intended to provoke a mistrial as a result of dissatisfaction with delays allegedly caused by respondents. Respondents point to the trial court's observation that the City attorney was an experienced prosecutor and "a competent, proficient attorney who is experienced in these matters." Just prior to the City's opening statement, the trial court admonished counsel that it should not "attempt to bring up issues that shouldn't be brought up, to ring bells that shouldn't be rung." In light of the counsel's experience and the trial court's admonition, respondents argue that the City had the requisite intent to provoke a mistrial.

In support, respondents rely on authority outside this court's jurisdiction, <u>State v. Casas</u>, 792 A.2d 737 (R.I. 2002) (*per curiam*), from Rhode Island. There, the Rhode Island supreme court found that a statement made by an inexperienced prosecutor during opening statement, in violation of a motion in *limine*, did not constitute evidence of "intentional goading" and therefore did not support a violation of double jeopardy:

> "The trial justice found that there was no evidence tending
>
> to show that the prosecutor wrongfully intended to goad the
>
> defense into moving for a mistrial. We agree with this conclusion

-12-

and note that the misconduct in this case, while clearly inappropriate, did not occur at a point in the proceedings where an unscrupulous prosecutor, faced with a rapidly derailing trial, conceivably could seek a premature end of the proceedings in hope of returning another day. That is the evil that *Kennedy* was intended to guard against, not unfortunate situations such as this case, in which a relatively young and inexperienced prosecutor, unfamiliar with the concept that a defendant's character is not admissible to establish guilt, commits an unsalvageable error." Casas, 792 A.2d at 739-40.

Experience alone does not support an inference of intent. Although authority outside Illinois's jurisdiction is not binding on this court (People v. Chandler, 88 Ill. App. 3d 644, 653, 411 N.E.2d 283 (1980)), Casas does not even support respondents' contention. Casas is actually similar to the present case, in that the trial had not yet even begun and the protections of Kennedy had not been violated. The level of experience of the prosecutor does not change the fact that no reversible damage was done to respondents' case.

Respondents also rely on Minnesota v. Handt, No. A03-1459 (Minn. App. May 25, 2004), an unreported case which is neither binding nor precedential on this court. See 166 Ill. 2d R. 23(e). Nevertheless, the Handt, court addressed an issue where, during opening statements, the prosecutor alluded to appellant's previous contacts with police. The district court granted appellant's motion for a mistrial. The Handt court reversed and remanded a case to the district court for a hearing on the prosecutor's intent, after finding that it was not clear whether the district court considered the circumstantial evidence of intent:

"The district court was forceful in its description of the prosecutorial misconduct, finding that the experienced prosecutor acted with 'knowing misconduct coupled with indifference toward the probable mistrial,' 'gross negligence,' and in 'bad faith.' The court suggested that the prosecutor was '[attempting] to win the case' unfairly ... by putting into the jury's mind evidence which the prosecutor knew or should have known he could not get into evidence under the rules of evidence for many reasons.' The district court nevertheless opined that the *Kennedy* standard is impossible to prove, unless, of course, ... a prosecutor would be willing to admit that they did it on purpose, that is that they tried to get the defense to request a mistrial, hard to imagine a situation in which ... the prosecutor would make that admission." Handt, slip op. at 1.

Handt is inapposite, as the court found "gross negligence" and "bad faith." No such findings were made here.

While comments made during opening statements may be improper they are often insufficient to set aside a verdict. People v. Johnson, 208 Ill. 2d 53, 115, 803 N.E.2d 405 (2003); People v Robinson, 236 Ill. App. 3d 313, 320, 603 N.E.2d 25 (1992). In light of the fact that a mistrial is not a guarantee, the record here does not support respondents' assertion that the comments of the City's attorney were made with the intention of securing a mistrial. As such, the trial court did not err in rejecting respondents' motions for dismissal on the grounds of double jeopardy.

Next, respondents contend that the trial court erred in refusing to conduct an evidentiary hearing to make factual findings regarding prosecutorial intent. Respondents rely on People v. Franklin, 119 Ill. App. 3d 899, 457 N.E.2d 1005, 1010 (1983) (Franklin I), in support of their contention. In Franklin I, the trial court declared a mistrial without making a factual finding as to whether the prosecutor intended to provoke the mistrial. The case was transferred to another judge, who dismissed the case on grounds of double jeopardy, and the State appealed. This court vacated the order dismissing the charges against defendant and remanded the case to the trial court to make findings regarding whether the prosecution intended to provoke defendant into moving for a mistrial, as required by Kennedy. This court, however, did not order the trial court to conduct an evidentiary hearing to make findings regarding intent. Franklin I, 119 Ill. App. 3d at 906. The defendant was subsequently convicted and appealed her conviction. People v Franklin, 159 Ill. App. 3d 56, 512 N.E.2d 40 (1987) (Franklin II).

On appeal, the defendant argued that the trial court's findings regarding her double jeopardy claim were insufficient because the trial court failed to conduct an evidentiary hearing. This court explicitly rejected that argument, concluding that the trial court's findings were sufficient because they were based on the trial court's review of the record and its observations of the prosecutor. Franklin II, 159 Ill. App. 3d at 61. Franklin I, therefore, does not support respondents' contention.

As additional authority for the same proposition, Hollins cites United States v. Oseni, 996 F.2d 186, 188-89 (7th Cir. 1993). There, codefendants were charged with federal drug offenses. During trial, codefendant Abdul K. Jafaru moved for a mistrial. His motion was granted, and he was tried separately in a new trial. On appeal, Jafaru argued that he was improperly tried on grounds of double jeopardy. The Seventh Circuit reversed Jafaru's conviction and remanded the

-15-

case for a hearing to determine the prosecutor's intentions since the trial court had not made a finding as to the intent of the prosecutor, as required by Kennedy. However, the Seventh Circuit did not mandate an evidentiary hearing, directing the court to do so only "if any residual doubts concerning [the prosecutors'] intentions remain[ed]." Oseni, 996 F.2d at 189. In reaching its decision the Seventh Circuit cited its prior decision in United States v. Jozwiak, 954 F.2d 458 (7th Cir. 1992), where the court held that evidentiary hearings are not required to determine prosecutorial intent because such intent may be sufficiently determined by an examination of a prosecutor's informal explanation. Oseni, 996 F.2d at 188, citing Jozwiak, 954 F. 2d at 460.

The basis for the trial court's findings here were the same as those in the Franklin cases. Neither the Franklin cases nor the Seventh Circuit cases required an evidentiary hearing. In light of this precedent, we conclude that an evidentiary hearing was not required in the present case.

Separately, Hollins urges this court to "recognize the generally broader safeguards afforded persons under Illinois Constitutional provisions," thereby implying that Illinois provides a broader definition of double jeopardy than the United States Constitution.

Hollins' contention is unsupported by authority. As stated in Franklin II, "the courts in this state have not broadened the United States Supreme Court's decision in Oregon v. Kennedy." Franklin II, 159 Ill. App. 3d at 60-61; see also Nelson, 193 Ill. 2d at 221; People v. Brisbon, 129 Ill. 2d 200, 220-21, 544 N.E.2d 297 (1989); People v. Ramirez, 114 Ill. 2d 125, 130-31, 500 N.E.2d 14 (1986); People v. Davis, 112 Ill. 2d 78, 86, 491 N.E.2d 1163 (1986); People v. Gathings, 128 Ill. App. 3d 475, 477, 470 N.E.2d 1260 (1984). Accordingly, Hollins has failed to show that the double jeopardy clause of the Illinois Constitution affords him any greater protection than does the double jeopardy clause of the United States Constitution.

Hollins further contends that "judicial overreaching bars [his] retrial," and that "the end result was simply that the trial court's diffidence to step down from this case rendered the trial nothing more than an irrational charade." Hollins provides no support for this contention other than to intermittently and repeatedly argue his points in favor of a finding of double jeopardy.

The City initially responds that Hollins has waived this issue for review for failure to raise it in the trial court. People v. Armstrong, 183 Ill. 2d 130, 158-59, 700 N.E.2d 960 (1998), *cert. denied*, 526 U.S.1009, 143 L. Ed. 2d 217, 119 S. Ct. 1150 (1999); People v. Adams, 131 Ill. 2d 387, 395, 546 N.E.2d 561 (1989).

In the alternative, the City argues that the Kennedy standard applies to allegations of judicial misconduct as well as prosecutorial misconduct and, as such, Hollins would have to show that the trial court intended to provoke the City into moving for a mistrial. People v. Roche, 258 Ill. App. 3d 194, 199-200, 630 N.E.2d 1248 (1994); People v. Parker, 202 Ill. App. 3d 454, 559 N.E.2d 1068 (1990); see also, United States v. Chapman, 954 F.2d 1352, 1360 (7th Cir. 1992); U.S. v. Buljubasic, 808 F.2d 1260, 1265 (7th Cir), *cert. denied*, 484 U.S. 815, 98 L. Ed. 2d 31, 108 S. Ct. 67 (1987). Hollins cannot point to anything in the record showing that the trial court demonstrated any such judicial misconduct.

## II. SUBSTITUTION OF JUDGE

Additionally, Kyles contends that even if this court does not dismiss this case on grounds of double jeopardy, the case should not proceed before Judge Lynch. Kyles argues that Judge Lynch is a potential witness relative to a significant issue: the meaning of the words "second floor" in the order. Kyles argues that since Judge Lynch wrote on the half sheet that he intended to close the VIP area, he has personal knowledge of the intended meaning of his order and is therefore a helpful witness to the defense.

Kyles urges disqualification of Judge Lynch pursuant to Illinois Supreme Court Rule 63(C)(1)(a), which provides as follows:

> "(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>
> (A)    [the judge] has a personal bias or prejudice concerning a party or the party's lawyer, or personal knowledge of the disputed evidentiary facts concerning the proceeding * * *."
>
> 188 Ill. 2d R. 63(C)(1)(a) (2000).

Kyles argues that the half sheet constitutes a part of the official court record in every municipal court case (Cook Co. Cir. G. O. 6.5(b) (eff. January 6, 1977), and is the court's official docket (Mitchell v. Norman James Construction Co., 291 Ill. App. 3d 927, 931, 684 N.E.2d 872 (1997)), and that an order closing the entire nightclub would have been very significant in light of the fact that neither the order nor the half sheet clearly indicates an intent to shut down the E2 nightclub. Kyles asserts that only Judge Lynch knows the actual meaning of the order. Kyles notes that under Illinois Supreme Court Rule 366(a)(5), the appellate court may make any order that the case may require, including an order that the case be remanded to a different judge. Raintree Homes, Inc. v. Village of Long Grove, 209 Ill. 2d 248, 807 N.E.2d 439, 447 (2004).

In its brief, the City responds that Kyles merely attempts to get this court to review the merits of respondents' numerous motions requesting Judge Lynch to step aside and that appellate courts lack jurisdiction to review nonfinal judgments, orders and decrees absent a statutory exception. People v. Schram, 283 Ill. App. 3d 1056, 1060-61, 672 N.E.2d 1237 (1996).

However, ast oral argument, the City withdrew its argument that this case should be remanded to Judge Lynch.

We find Kyles' argument compelling and do not agree that Kyles is requesting a review of prior nonfinal judgments. From the record, it appears that the interpretation of the original order and the subsequent orders regarding the closing of either the E2 VIP rooms or the second floor or both may become an issue at trial and that Judge Lynch had personal knowledge of disputed evidentiary facts. As such, it would be improper for Judge Lynch to continue to preside over this case. We therefore affirm the trial court's ruling regarding double jeopardy and remand this case to the circuit court for reassignment to a different judge for the remainder of the proceedings.

Affirmed and remanded, with instructions.

QUINN, P.J., and MURPHY, J., concur.