Docket No. 88186–Agenda 33–May 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TRACY GENE NELSON, Appellant.

Opinion filed September 21, 2000.

JUSTICE HEIPLE delivered the opinion of the court:

On April 23, 1997, defendant Tracy Nelson was tried before a jury in the circuit court of Vermilion County on two counts of aggravated criminal sexual assault (720 ILCS 5/12–14(a)(2), (a)(4) (West 1996)) and two counts of home invasion (720 ILCS 5/12–11(a)(1), (a)(2) (West 1996)). Following a mistrial entered on motion of defendant, he was again tried on January 20, 1998, and was found guilty on all four counts. For the reasons that follow, we reverse defendant’s convictions.

On October 12, 1996, a man entered the victim’s home without authority, beat her and forced her to perform oral sex on him. The victim identified the defendant as her assailant, and on April 23, 1997, defendant was tried before a jury for aggravated criminal sexual assault and home invasion.

During the course of that trial, the prosecutor became aware of a person (Sherry Beck) who claimed to have overheard an inculpatory statement about defendant made by his wife. Specifically, when the charges for home invasion were read, defendant’s wife allegedly said, “He told me the door was open.”

Two days after the State became aware of Sherry Beck, defendant called his wife as a witness in his defense. During cross-examination, the State asked defendant’s wife whether, when the charge of home invasion was read, she stated “that wasn’t true, he said the door was unlocked.” Defendant’s wife denied making the statement. Later that day, the State advised defense counsel that he intended to call Sherry Beck as a rebuttal witness to impeach defendant’s wife.

The following day, defendant moved for a mistrial. During oral argument on the motion, defense counsel advised that she was unaware of this alleged statement until the State’s cross-examination, and was unaware of Sherry Beck’s identity until the State advised of its intention to call her as a rebuttal witness. The State conceded the timing of the disclosures, but argued that the question on cross-examination was made in the hope that lightning would strike and that the need for the rebuttal witness was unknown until defendant’s wife denied making the statement. The trial court granted the mistrial, finding that the prejudice from this line of questioning outweighed its probative value.
(footnote: 1)
 On January 20, 1998, defendant was tried again, and was ultimately convicted on all four counts. After the appellate court affirmed defendant’s convictions in an unpublished opinion, this court granted defendant’s petition for leave to appeal.

In his appeal, defendant initially argues that the second trial was precluded by the double jeopardy clause. Alternatively, he argues that a series of alleged instances of prosecutorial misconduct requires reversal. We find that the second trial was not barred by the constitutional protections against double jeopardy. However, we further find that two of defendant’s assertions of prosecutorial misconduct are well taken, and compel retrial.

We first address the issue of double jeopardy. Defendant did not raise this argument at his second trial, but the State has not argued waiver to this court.
(footnote: 2) Defendant argues that, when the State questioned defendant’s wife concerning a statement which was in effect double hearsay, it did so knowing that such a statement was inadmissible. He also argues that the State’s failure to disclose the existence of Sherry Beck until after defendant’s wife testified, a full day after it learned of her existence, was an intentional discovery violation. Defendant argues that these improper acts were committed to induce him to move for a mistrial. In the alternative, defendant requests that the cause be remanded for an evidentiary hearing on the prosecutor’s motives in this regard.

A motion for mistrial by a defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact. 
People ex rel. Roberts v. Orenic
, 88 Ill. 2d 502, 509 (1981). For double jeopardy principles to bar a retrial, the prosecutor must actually intend to cause a defendant to seek a mistrial. 
People v. Marchbanks
, 125 Ill. App. 3d 796, 798-99 (1984); 
People v. Townsend
, 119 Ill. App. 3d 529, 531 (1983). This court has rejected more generalized standards focusing on whether the prosecutor’s conduct was in bad faith or was intended to harass a defendant. 
People v. Ramirez
, 114 Ill. 2d 125, 130 (1986). See also 
Oregon v. Kennedy
, 456 U.S. 667, 674, 72 L. Ed. 2d 416, 424, 102 S. Ct. 2083, 2088-89 (1982).

Here, the record does not support the assertion that the prosecutor actually intended to cause a mistrial. A prosecutor does not demonstrate this intent merely by offering evidence in error, even if done purposely. 
Ramirez
, 114 Ill. 2d at 131. Moreover, the record demonstrates that the prosecutor believed the evidence was admissible; he actively fought the motion for a mistrial, and believing the original ruling to be merely a discovery sanction, sought to submit the same evidence at the second trial. We do not believe the strong showing required to invoke the protection against double jeopardy has been made. Nor do we believe an evidentiary hearing would be useful; the trial court listened to extended argument on the merits of the motion for mistrial, which shed significant light on the prosecutor’s thought processes and motives. The second trial against defendant appropriately went forward without infringement on defendant’s right against being twice placed in jeopardy.

Defendant next argues that a series of acts constituting prosecutorial misconduct was committed by the State, denying him a fair trial. The State initially responds that defendant’s failure to raise these arguments at trial constitutes waiver. Defendant concedes his failure to adequately preserve the arguments, but urges this court to consider them because they amount to plain error.

Plain error bypasses the waiver rule. 134 Ill. 2d R. 615(a). Plain error exists when (1) the evidence is closely balanced; or (2) an error is so fundamental and of such magnitude that the defendant was denied a fair trial. 
People v. Lucas
, 151 Ill. 2d 461, 482 (1992). While plain error will be found in either instance, we find that both situations exist in the instant case. First, the evidence was closely balanced. The conviction rested primarily on the identification of defendant by the victim, which was supplemented by police testimony regarding the underlying investigation. The victim conceded that she was under the influence of a mild sedative at the time of the incident, which in the past has affected her by way of “disassociation” (the victim’s term). She further described this disassociation as having the effect of making her lose time. One police officer testified that the victim related the time of the offense as between 6 and 6:15 p.m. Sunset on that day was at 6:18 p.m. No physical evidence linking defendant to the crime was introduced.

In his defense, defendant introduced alibi evidence from three witnesses stating that defendant was with them until after sunset. One witness was able to supplement her estimate of the timeline with an unrelated incident report she had prepared at a gas station with the local police at 6 p.m. After completing the incident report she returned to her home, which is where all of the alibi witnesses testified that defendant spent his day and early evening. Combined with the testimony that the crime occurred before 6:15 p.m., 
i.e.
, during daylight hours, defendant sought to establish that he could not have been the perpetrator.

We find this evidence very closely balanced. Three persons accounted for defendant’s whereabouts through the day into the evening. The time of the incident was pinpointed to a 15-minute period shortly before sunset. Defendant’s link to the crime was established through a single witness on mild sedation. While it is the jury’s province to weigh these competing facts, it can hardly be said that reasonable juries could only draw from them a conclusion of guilt.

We also find that one of the alleged errors, concerning an improper argument to the jury, was so fundamental and of such magnitude that the defendant was denied a fair trial. The basis for this finding is more fully set forth 
infra
. Given that both circumstances giving rise to plain error are present with the improper jury argument, and that one circumstance giving rise to plain error is present with all three arguments, we will address defendant’s contentions on their merits.

Defendant’s first contention of prosecutorial misconduct concerns “mug shot” evidence. During the course of the trial, the State elicited the following testimony from Officer Jack Smith:

“Q. Okay. Why did you meet with [the victim] that day?

A.  I was asked to assist Investigator Anderson who could not be present in order to show–afford [the victim] an opportunity to look at some photographs.

Q. What kind of photographs?

A. Particular photographs that were shown to her initially were what we call mug shots. They are in books. These are photographs that are taken when someone is–

Q. Okay.

A. in custody.

***

[Officer Smith]: She stated that–she wanted to know if we had by chance another photograph, because that particular photograph she stated it appeared to be the person, but the hair was different, something was different about the hair. She thought the hair was too long in the photograph she was looking at.

Q. So what did you do when she said that?

A. In looking at the photograph that she had depicted it was a photograph that was dated meaning it was a couple three years old. I checked our files and found out that particular person would have a more recent photograph. I then went to records and obtained a more recent photograph of the same person and brought it to [the victim] and showed her that particular photograph, which was a more updated photograph.

***

Q. Okay. And do you recall why did you meet with [the victim] on the second time?

A. There had been a police report made involving the same person and an opportunity arose for a new photograph to be taken of the same person that [the victim] had pointed out on the two earlier occasions.”

When identification is a material issue at trial, testimony relating the use of mug shots in an investigation may be introduced to show how a defendant was initially linked to the commission of an offense. However, mug shot evidence tending to inform the jury of a defendant’s commission of other, unrelated criminal acts should not be admitted. 
People v. Arman
, 131 Ill. 2d 115, 123 (1989). Here, the jury was informed in a not-so-subtle manner that defendant had had mug shots taken on three different occasions, with enough time in between to affect how he looked in the photos. The testimony also implied that the most recent photograph was taken at a time proximate to the commission of the underlying incident. This is precisely the type of evidence prohibited by 
Arman
. Nor do we view this as harmless error. When admitted in error, “mug shot” evidence will not warrant a reversal when competent evidence establishes the defendant’s guilt beyond a reasonable doubt, and it can be concluded that retrial without the challenged evidence would produce no different result. 
Arman
, 131 Ill. 2d at 124. Given the close nature of the evidence, jury speculation as to what might have led to three separate arrests (including one near the time of the underlying crime) could have been the difference between conviction and acquittal. The admission of the mug shot evidence was reversible error.

Defendant next contends that the State misled the jury during closing argument concerning the timing of the incident. During closing argument, defense counsel’s principal theme was that the crime took place before sunset, and that three alibi witnesses accounted for defendant’s whereabouts until after sunset. In support of this theme, defense counsel called upon the jury to rely on, 
inter alia
, the victim’s testimony in this regard.

The State then led off its rebuttal argument as follows:

“One problem, think back to yesterday. Despite what [defense counsel] wants you to say [the victim] never told us what time, because she didn’t know. She never said between six and 6:15. [Defense counsel] stands up here and says again and again through [her] argument six to 6:15, but [the victim] never said it. She never gave us a time. *** We don’t know what time it happened, because [the victim] doesn’t know what time it happened, because she couldn’t tell us.”

In actuality, during the second trial the victim was never asked the time of the incident. However, she gave the following testimony during her first trial:

“Q. Okay. As best you can estimate about what time of day was this?

A. It had to be like in between six and 6:30.

Q. Could it have been later?

A. I don’t–I don’t think so.

Q. Okay. Could it have been earlier?

A. No.

Q. And you know that because?

A. Because of the phone calls I made and when I laid down.”

This was the only testimony given by the victim concerning the time of the incident.

Defendant argues that the prosecutor misled the jury when he argued that the victim did not know when the attack occurred. In so arguing, he asserts that the prosecutor made statements he knew to be false, given the victim’s testimony in the prior trial.

We agree that, if the prosecutor actually remembered this testimony, his argument would have been improper. However, we also believe defendant imputes too much knowledge on the prosecutor from the short testimony given nine months prior. Indeed, defense counsel (who also represented defendant at the first trial) apparently forgot this testimony; despite the heavy reliance on the time frame, defense counsel asked no questions of the victim to clarify the timing of the incident. While we agree that the State’s principal role is procure justice, we do not forget that a criminal trial is an adversarial one. We will not impute a duty on the State to remember and secure favorable testimony for the defendant in a situation such as this; that is the role of defense counsel. Nor will we presume an improper motive on the part of the prosecutor absent more to suggest the same. The State’s argument to the jury in this regard was a fair one, given the evidence adduced at the second trial.

Defendant’s final assertion of prosecutorial misconduct also concerns the State’s rebuttal argument. The prosecutor culminated that argument by stating the following:

“When we get down to it and the case gets into your hands, you took an oath to well and truly try the issues in this case. We’ve all taken oaths. [Defense counsel] and I took an oath when we became lawyers. The Judge took a similar oath–took an oath when he became a judge. We present our cases. We argue it to you. The witnesses took an oath and told you what they said.

The Judge will instruct you on the law, but you took an oath to well and truly try the issues. And part of that oath is what you come in here you don’t just forget everything you learned in your entire life. You bring in here your obligation to judge it on your common sense. And your oath is to enforce the law when the law has been proven if the evidence proves it.

Whenever a jury acquits a person who has been proven guilty they don’t follow their oaths. And if you let the defendant, Tracy Nelson, walk out of this courtroom on this evidence I would suggest you have not lived up to your oaths.

Many lawyers thank the jury at this point. I don’t. I’m not going to thank you today, because you haven’t earned that thanks yet. You earn the thanks of the People of the State of Illinois when you rule on the evidence and find in this case on this evidence the defendant guilty. Only when you have come to your verdict have you finished your job.

And you are now the people that you read about in the paper all the time those people–how could they let that guy go? How could they convict [
sic
] that guy? You’re those people now.

And I would suggest your oaths require you on the evidence here, *** you can see that the defendant is guilty. And I would suggest your oaths require you to find him guilty on this evidence.”

As noted above, defendant failed to preserve his objection to this argument. We have already held that the evidence was closely balanced, compelling us to consider defendant’s argument under the plain error rule. With regard to this particular argument, we also find that the error was so fundamental and of such magnitude that the defendant was denied a fair trial.

Indeed, this argument is wholly inappropriate. In 
People v. Kidd
, 175 Ill. 2d 1, 50-51 (1996), we recognized this type of argument as constituting prosecutorial misconduct. Other courts have come to the same conclusion. Our own appellate court has held that remarks regarding a jury violating its oath by acquitting a defendant are inappropriate. 
People v. Castaneda
, 299 Ill. App. 3d 779, 786 (1998). The Supreme Court of New Jersey has noted that, “[R]emarks implying that jurors will violate their oaths if they fail to convict *** are improper. [Citations.] *** Although the prosecution in a criminal case may use forceful language in summing up the State’s case [citation], it may not, as here, explicitly tell the jurors that they are obligated by their oath to return a particular verdict.” 
State v. Pennington
, 119 N.J. 547, 576, 575 A.2d 816, 831 (1990). The Florida Court of Appeals, when faced with a prosecutor who argued that a verdict for a defendant would be “in violation of your oath [
sic
] as jurors,” quoted its supreme court when it ruled that “ ‘[u]ltimate deductions from the evidence are for the jury to draw. Counsel may argue what deductions in his judgment the evidence would reasonably support, but under no circumstances is he warranted in offering dogmatic statements as to what the evidence proves.’ ” 
Redish v. State
, 525 So. 2d 928, 930-31 (Fla. App. 1988), quoting 
Carlile v. State
, 176 So. 862, 864 (Fla. 1937).

In 
Kidd
, this court held that a similar argument made during the sentencing hearing of a capital case was prosecutorial misconduct. However, we concluded that the defense’s prompt objection and the trial judge’s instruction to disregard the comment cured the error. Here, on the other hand, there was no objection, and no curative instruction. This fundamental error casts significant doubt on the reliability of the jury’s verdict. In combination with the erroneous mug shot testimony, it cannot be said that defendant received a fair trial. His convictions must therefore be reversed.

Although we find the evidence in this case to be closely balanced, we nevertheless hold, after a thorough review of the record, that the evidence was sufficient to support defendant’s convictions, hence permitting retrial. In so holding, however, we make no conclusion as to defendant’s guilt that would be binding on retrial. See 
People v. Placek
, 184 Ill. 2d 370, 390-91 (1998).

The judgments of the appellate court and circuit court are hereby reversed and the cause remanded to the circuit court for further proceedings.

Appellate court judgment reversed;

circuit court judgment reversed;

cause remanded.

FOOTNOTES
1:    
1
There was initially some ambiguity as to whether the mistrial was granted simply as a discovery sanction for failure to timely disclose the statement, causing prejudice to the defense. On re-trial, the court clarified that it had ruled the statement substantively inadmissible, and on Defendant’s motion 
in limine
 barred the State from pursuing this line of questioning.

2:     
2
The State argued waiver to the appellate court but that court addressed the double jeopardy issue on the merits, finding the failure to raise the argument amounted to plain error.