SIXTH DIVISION 

October 8, 2004

No. 1-02-2925

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee, 

v.

TERRANCE SUTTON,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Edwin A. Gausselin,

Judge Presiding.

JUSTICE O’MARA FROSSARD delivered the opinion of the court:

A jury found Terrance Sutton guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 1996)) for the stabbing death of Tiffany Hankins.  Defendant was sentenced to the Illinois Department of Corrections for 100 years.  Defendant’s conviction was reversed and the case remanded for retrial.  
People v. Sutton
, 316 Ill. App. 3d 874 (2000).  Upon retrial a jury found defendant guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 1996)).  A sentence of 100 years was imposed.  Defendant appeals his conviction for the following reasons: (1) he received ineffective assistance of counsel because his trial lawyer failed to request a second degree murder instruction based on provocation; and (2) he was denied his right to a fair trial by improper comments made by the prosecution in opening and closing statements.

I. FACTUAL BACKGROUND

In October 1995, Hankins and her three children moved into an apartment with defendant.  Defendant quit his job and began selling drugs.  Hankins and defendant began to argue about his drug dealing.  In January 1996, Hankins was injured during a domestic argument she had with defendant, eventually resulting in Hankins moving back to her mother’s house.  Hankins gave birth to a baby boy, Malcolm, in March 1996.  While Hankins was living with her mother defendant would visit her two or three times a week.

On April 25, 1996, defendant visited Hankins at her mother’s house, they argued, and defendant killed Hankins by stabbing her repeatedly.  During the argument, Hankins told defendant that he was not the father of baby Malcolm.  At trial, the prosecution presented a statement defendant gave to Assistant State’s Attorney Patricia McLaughlin after defendant was arrested on June 10, 1996.  In the statement defendant indicated he and Hankins were talking and they started to argue:

“***  Tiffany got up and went to a sliding glass door and got a skate.  I reached over and picked up the knife.  I knew she was not going to hit me with the skate.  She would never do that.  But I was angry at her and I stuck the knife into Tiffany’s side.  We were in the basement area.  I know there was an Oriental rug on the floor.  We struggled and Tiffany and I were moving into the bedroom area as I stabbed her.  I don’t remember how many times I stabbed her.”

While defendant’s statement to the prosecutor indicated he knew Hankins was not going to hit him with the skate, at trial, defendant testified that Hankins hit him with the roller skate a few times.  He said that he felt “mad, disappointed, hurt, upset, [a] whole mixture of feelings at one time,” and then started lashing out at Hankins with the knife.  A complete recitation of the factual background surrounding the case was detailed in
 Sutton
, 316 Ill. App. 3d at 874.  Additional facts will only be repeated as necessary to resolve the arguments raised by defendant in the instant appeal.

II. INEFFECTIVE ASSISTANCE OF COUNSEL

A defendant, under both the United States and Illinois Constitutions, has a due process right to the effective assistance of counsel in a criminal prosecution.  U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8.  Defendant contends his trial lawyer was ineffective because he failed to request a second degree murder instruction based on provocation.  Defense counsel did not request a provocation second degree murder instruction; however, the jury was instructed on second degree murder based on an unreasonable belief in self-defense.

Defendant contends his trial counsel was ineffective because “where Sutton and Hankins were involved in an ongoing relationship, and where Hankins’ confession of infidelity, coupled with the devastating information that Sutton was not the father of baby Malcolm, led to the fight which culminated in Hankins’ death, Sutton was entitled to have the jury instructed that he acted under ‘sudden and intense passion’ set in motion by Hankins’ revelations.  Additionally, there was copious evidence of mutual combat, one of the recognized categories of provocation under Illinois law.”

In support of that contention, defendant makes three arguments: (1) Hankins’ confession of infidelity caused sudden and intense passion in defendant, and the jury should have been  instructed on Hankins’ provocation as a mitigating circumstance; (2) the provocation defense of sudden and intense passion triggered by a revelation of infidelity should not be limited to married persons; and (3) the extensive evidence of mutual combat warranted a second degree murder instruction based on provocation.  We take each argument in turn.

Each argument is made in context of the ineffective assistance arguably provided by defense counsel; therefore, we begin by noting the principles articulated in
 Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674
, 104 S. Ct. 2052 (1984).  In order to establish ineffective assistance of counsel, a defendant must demonstrate both a deficiency in counsel’s performance and prejudice resulting from the deficiency. 
 Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.
  To demonstrate performance deficiency, a defendant must establish that counsel’s performance was below an objective standard of reasonableness. 
 Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  Prejudice is demonstrated if there is a reasonable probability that, but for counsel’s deficient performance, the result of the proceeding would have been different. 
 Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  The prejudice component of
 Strickland 
entails more than an “outcome-determinative test”; rather, the defendant must show deficient performance of counsel rendered the result of the trial unreliable or the proceeding fundamentally unfair. 
 People v. Richardson
, 189 Ill. 2d 401, 411 (2000).  With those principles in mind, we address defendant’s argument that his trial lawyer was ineffective because he failed to request a second degree murder instruction based on provocation.

First degree murder may be reduced to second degree murder when either of the following mitigating factors are present:

“(1) At the time of the killing [the offender] is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed; or

(2) At the time of the killing [the offender] believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code [Justifiable Use of Force; Exoneration], but his belief is unreasonable.”  720 ILCS 5/9-2(a)(1), (2) (West 1996).

A. PROVOCATION INSTRUCTION NOT JUSTIFIED BY CONFESSION OF INFIDELITY

The Illinois Criminal Code (720 ILCS 5/1-1 
et seq.
 (West 1996)) does not specify what types of circumstances or categories of serious provocation would reduce first degree to second degree murder.  However, the Illinois Supreme Court in
 People v. Chevalier
, 131 Ill. 2d 66, 71 (1989), quoting 
People v. Crews
, 38 Ill. 2d 331, 335 (1967), indicated that for purposes of reducing first degree murder based on serious provocation the “ ‘only categories of serious provocation which have been recognized are: “substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender’s spouse; but not mere words or gestures or trespass to property.”  [Citation.]’ ” 

Defendant acknowledged the ruling in
 Chevalier
 that mere words admitting adultery are not legally adequate provocation to reduce first degree murder.  We note that adultery by a spouse justifying a provocation instruction has generally been limited to those instances where the parties were discovered in the act of adultery or immediately before or after its commission.  
Chevalier
, 131 Ill. 2d at 76;
 People v. Middleswart
, 124 Ill. App. 3d 35, 39 (1984).  An exception to these general rules based on verbal confessions of infidelity together with other conduct has been recognized in the following three Illinois cases: 
People v. Ambro
, 153 Ill. App. 3d 1 (1987);
 
People v. Carr
, 91 Ill. App. 3d 512 (1980); and
 People v. Ahlberg
,
 
13 Ill. App. 3d 1038 (1973), appeal denied, 55 Ill. 2d 602 (1974).  Relying on these three cases, defendant contends that it should not be necessary to catch his beloved “in the act” in order to have the jury instructed on second degree murder based on sudden and intense passion resulting from serious provocation caused by a confession of infidelity. 

R
egarding defendant’s argument that we should find an exception to the “caught in the act” requirement, we note that 
 Ambro
,
 Carr
, and
 Ahlberg
 involved situations where although the spouse was not “caught in the act,” the confession of adultery was only one of a series of provoking statements or circumstances.  In each of these cases, in addition to a confession of adultery by the wife
, there was a history of marital discord; a wife who demonstrated an intent to permanently leave her husband; and insulting remarks, including, but not limited to, the husband’s masculinity.  
Ambro
,
 Carr
, and
 Ahlberg
 recognize an exception to the “caught in the act” requirement for a provocation instruction that requires a confession of adultery, plus a series of provoking statements or circumstances over a period of time.

However, t
his exception was specifically rejected by the Illinois Supreme Court in
 Chevalier
 where the court questioned why a history of marital discord should be a factor in favor of a provocation instruction.  The 
Chevalier
 court noted that such an instruction requires evidence of 
 
“sudden
 
passion,” and that a history of marital discord would undermine rather than support the argument that the evidence demonstrates sudden and intense passion.
  Chevalier
, 131 Ill. 2d at 75.  In
 Chevalier
, similar to the instant case, relying on the
 Ahlberg
 line of cases, the court was asked to change the law by holding that a confession of adultery by a spouse was legally adequate for a provocation instruction.  The
 Chevalier
 court declined to do so.  
Chevalier
, 131 Ill. 2d at 76.  The
 Chevalier 
court noted the
 Ahlberg
 line of cases simply ignores the rule that “mere words are insufficient provocation.” 
 Chevalier
, 131 Ill. 2d at 76.  The court in
 Chevalier
 specifically held: “The decisions in
 Ahlberg
,
 Carr
,
 
and
 Ambro
 are overruled to the extent they are inconsistent with this opinion.” 
 Chevalier
, 131 Ill. 2d at 75.  Regarding the
 Ahlberg
 “exception,” 
the court in
 Chevalier
 indicated as follows: “We conclude that the ‘exception’ to the general rule created by the
 Ahlberg
 line of cases is an incorrect statement of Illinois law.” 
 Chevalier
, 131 Ill. 2d at 75.

Defendant, recognizing the holding in
 Chevalier
,
 
concedes  that “[a]lthough  Illinois law limits the provocation defense by requiring that the defendant catch his or her partner in the act of infidelity,
 ***
  this unduly restrictive interpretation must be reconsidered.”  In the context of the instant case, we find the
 Chevalier
 interpretation is not unduly restrictive.  The oral confession of Hankins regarding infidelity occurred months after the event.  Even interpreting the defendant’s relationship with the victim as demonstrating a history of discord, or provoking circumstances over a period of time, such history or circumstances would undermine, not support the argument that the evidence reflects sudden and intense passion. 
 Chevalier
, 131 Ill. 2d at 75.
  Moreover, as previously noted,
 Chevalier
 found the
 Ahlberg
 “exception” to the rule that “mere words are insufficient provocation” was an incorrect statement of Illinois law. 
 Chevalier
, 131 Ill. 2d at 75-76.  
Chevalier
 declined “to change the law by holding that a confession of adultery by a spouse is legally adequate provocation.” 
 Chevalier
,
 
131 Ill. 2d at 76.

In the instant case, defendant testified that he and Hankins argued and Hankins hit him with a skate a few times.  He further testified that he and Hankins became “violent *** in each other[’s] faces.”  Hankins told defendant that her baby, Malcolm, was not his son.  He testified he felt “mad, disappointed, hurt, upset, [a] whole mixture of feelings at one time,” and then started lashing out at Hankins with the knife.  Rather than seeking a provocation instruction based on Hankins’ confession of infidelity, defense counsel, at trial, challenged the State’s case based on self-defense.  That defense was sound trial strategy supported by the evidence and by the law, as clearly articulated in
 Chevalier
: “The rule that mere words are insufficient provocation applies no matter how aggravated, abusive, opprobrious or indecent the language.”  
Chevalier
, 131 Ill. 2d at 71-72, citing 
People v. Neal
, 112 Ill. App. 3d 964, 967 (1983).   

As reflected by the record, defense counsel’s sound trial strategy supported by the law and the evidence undermines defendant’s argument that his trial counsel was ineffective.  
People v. Palmer
, 162 Ill. 2d 465, 480 (1994), quoting 
People v. Haywood
, 82 Ill. 2d 540, 543-44 (“ ‘an ineffective assistance of counsel claim which arises from a matter of trial strategy will not support a claim of ineffective representation unless that strategy is unsound’ (emphasis omitted)”); 
People v. Gallardo
, 112 Ill. App. 3d 764, 770 (
1983) (defense counsel’s decision to forgo an argument based on self-defense in favor of an argument of not guilty was a matter of sound trial strategy and did not amount to incompetence)
.  
Defendant testified that he grabbed the knife and began stabbing the victim only after they had engaged in an intense argument and she began striking him with a roller skate.  In closing argument, defense counsel indicated that defendant believed that being hit in the head by the skate could send him to the hospital or even cause his death.  Defense counsel’s decision to rely on the corresponding self-defense instruction based on the evidence was a matter of sound trial strategy.

In the factual context of the instant case, the oral confession by Hankins regarding infidelity which occurred months earlier, together with the surrounding circumstances, was insufficient as a matter of law to justify a second degree murder instruction based on provocation.
  Chevalier
, 131 Ill. 2d at 76;
 Schorle
, 206 Ill. App. 3d 748, 758 (1990).  For the reasons previously discussed, we find defense counsel was not ineffective for failing to request that the trial court 
instruct the jury on second degree murder based on serious provocation caused by a confession of infidelity communicated by mere words months after the act of infidelity.

B. EXPANDING PROVOCATION DEFENSE BASED ON NATURE OF RELATIONSHIP

In support of his allegation that trial counsel rendered ineffective representation, defendant additionally argues that the provocation defense of spousal adultery should not be limited to married persons.  Sutton and Hankins were never married.  Defendant met Hankins in the spring of 1995 and killed her in the spring of 1996.  Defendant and Hankins were not living together at the time of the homicide.  Hankins lived with defendant in October, November, and December of 1995, but moved out by January of 1996.  It was during January 1996 that Hankins was injured during a domestic argument she had with defendant, eventually resulting in Hankins moving back to her mother’s house. 

Defendant relies on
 People v. McCarthy
, 132 Ill. 2d 331, 341 (1989), quoting 2 W. LaFave & A. Scott,
 
Substantive Criminal Law §7.10, at 259 (1986), for the proposition that the provocation defense of spousal adultery should be extended to an unmarried couple where there existed a longstanding relationship comparable to that of husband and wife.  However, 
McCarthy
 did not resolve the question of whether the category of serious provocation recognized in instances of spousal adultery should be expanded to include unmarried persons.  The Illinois Supreme Court in
 McCarthy
 noted that the unmarried victim and defendant had ended their relationship two months before the homicide occurred and the victim was no longer living with the defendant.  
McCarthy
, 132 Ill. 2d at 342.  In that factual context, 
regarding instructing the jury as to serious provocation based on sudden and intense passion, the
 McCarthy
 court concluded: “Because the instruction would not be available in the present case, we need not determine here whether the category of serious provocation already recognized in instances of spousal adultery should be enlarged to include unmarried persons who share a marital-type relationship.”  
McCarthy
, 132 Ill. 2d at 342.  The 
McCarthy
 court further noted that just as divorced persons could not benefit from the provocation defense of spousal adultery, “there would be no reason to afford the same instruction to unmarried persons whose relationship has ended.” 
 McCarthy
, 132 Ill. 2d at 342.

As previously noted, defendant and Hankins tried living together for three months but were unable to coexist due to domestic arguments.  From January of 1996 until her death in April of 1996, Hankins lived with her mother and saw defendant two or three times a week.  We have found no Illinois case expanding the adultery category of serious provocation to a 
de
 
facto
 marital-type relationship for purposes of reducing first degree murder to second degree murder.

In fact, as recognized by the defendant, the court in
 People v. McDonald
, 63 Ill. App. 2d 475, 480 (1965), limited the application of the “infidelity” provocation defense to married persons.  More recently, the court in
 McCarthy
, 132 Ill. 2d at 331, recognized that the spousal limitation has been questioned in legal literature in cases of a “longstanding relationship comparable to that of husband and wife”; however, as previously noted, the 
McCarthy
 court made no determinative ruling on that issue.  
McCarthy
, 132 Ill. 2d at 341-42.

We similarly need not resolve the issue of whether to expand the adultery category of serious provocation to a “longstanding relationship comparable to that of husband and wife” because no such relationship existed in the instant case.  Defendant and Hankins were not living together at the time of the homicide, the length of their relationship was approximately one year, and during the months immediately preceding the homicide defendant only saw Hankins two or three times a week.  In the factual context of the instant case, we find the nature, extent, and duration of the relationship fails to qualify it as a longstanding relationship comparable to that of husband and wife.  Under the factual circumstances, the provocation instruction would not be available in the instant case.  Accordingly, we need not resolve whether to expand the adultery category of serious provocation to include unmarried persons who share a longstanding relationship comparable to that of husband and wife. 

We note parenthetically that in defendant’s first trial defense counsel requested, but was refused, a serious provocation instruction based on an oral confession of infidelity.  The trial court indicated that in Illinois, the defendant and victim must have been a married couple and the defendant was required to catch the victim in the act of adultery or immediately before or after its commission.  The trial court, during the first trial, ruled that the evidence did not support either element.  As reflected by the record in the instant case, trial counsel’s decision to defend based on second degree murder under a theory of unreasonable belief in self-defense, rather than serious provocation triggered by adultery of a spouse, was sound trial strategy supported by the law and the evidence.  For the reasons previously discussed, defense counsel was not deficient for failing to request an instruction unsupported by the law and the evidence.

C.  PROVOCATION INSTRUCTION NOT JUSTIFIED BY MUTUAL COMBAT

Defendant additionally argues his trial counsel was deficient for failing to request a second degree murder instruction based on provocation triggered by mutual combat. 
 “[M]utual combat is a fight or struggle which both parties enter willingly or where two persons, upon sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat.”  
People v. Austin
, 133 Ill. 2d 118, 125 (1989).  
One who acts in self-defense is not entering into combat of his own free will and is not entitled to a mutual combat instruction.  
People v. Delgado
, 282 Ill. App. 3d 851, 859 (1996) (defendant who acts in self-defense is not entitled to a mutual combat instruction).

There is no mutual combat where the manner in which the accused retaliates is out of all proportion to the provocation, particularly where homicide is committed with a deadly weapon.  
Austin
, 133 Ill. 2d at 125 (no evidence of mutual combat where unarmed victim had spoken gruffly to defendant and hit defendant with a transfer punch;
 
victim’s conduct amounted to slight provocation disproportionate to the retaliatory violence of defendant who shot and killed the victim); 
People v. Dower
, 218 Ill. App. 3d 844, 853 (1991) 
(
no evidence of mutual combat although victim allegedly had knife and was quarreling with defendant; victim never threatened defendant with knife and defendant was admittedly unafraid of victim before shooting and killing her)
.

In the instant case, the record fails to support defendant’s argument that his trial counsel should have requested a mutual combat instruction.  The record reflects the contact between the victim and defendant was not on equal terms, given the superior size and strength of defendant and the lack of injury to defendant.  Defendant responded to allegedly being hit by the victim with a roller skate by stabbing the victim 23 times, and 9 of those stab wounds were to her back.  The record reflects that the manner in which the defendant retaliated was completely out of all proportion to the words and contact made by the victim. 
 Defendant admitted on cross-examination that he knew the victim would not kill him or put him in the hospital by striking him with the roller skate.  If defendant and victim had mutually engaged in combat, defendant retaliated out of all proportion to the victim’s conduct, negating a mutual combat instruction. 
 People v. Lockhart
, 201 Ill. App. 3d 700, 714 (1990) (defendant’s retaliation out of all proportion to victim’s conduct precludes mutual combat instruction). 
 Defense counsel was not deficient for failing to request an instruction unsupported by the law and the evidence.

Moreover, defendant testified that he acted in self-defense.  As previously noted, one who defends himself from an attack is not entitled to a mutual combat instruction.  
People v. Flores
, 282 Ill. App. 3d 861, 867-68 (1996) (defendant was not entitled to a mutual combat instruction based on his testimony that he found himself the unwilling participant in a fight and acted only in self-defense).  A mutual combat instruction was not justified since defendant’s theory at trial was that he used the knife in self-defense. 
 People v. Grisset
, 288 Ill. App. 3d 620, 630 (1997) (“mutual combat does not constitute a fight in which one of the parties acts in self-defense”).  Relying on defendant’s testimony, defense counsel argued in favor of a guilty verdict for second degree murder based on an unreasonable belief in self-defense.  Defendant testified, and his trial counsel asserted in closing argument, that defendant acted in self-defense, albeit unreasonably, against the victim, who defendant testified attacked him with a roller skate.  Consistent with defendant’s trial testimony and argument, defendant indicated in his brief that at trial he “presented evidence that [the victim] struck him with a roller skate, and that he fought back to protect himself.”  The evidence, including defendant’s testimony that he fought to protect himself, precluded a mutual combat instruction.  
Delgado
, 282 Ill. App. 3d at 859 (a mutual combat instruction was not proper where defendant testified that he found himself the unwilling participant in a fight and acted only to defend himself from attack).

For the reasons previously discussed, the law and the evidence did not support instructing the jury on serious provocation under either category of adultery or mutual combat.  Defense counsel did not provide ineffective representation by not requesting a second degree murder instruction based on serious provocation.

III. OPENING STATEMENTS AND CLOSING ARGUMENTS BY STATE

Defendant argues that the State denied him a fair trial by making the following improper comments: (1) repeatedly remarking that there is a “huge difference” between first and second degree murder; (2) arguing that the jurors had a “duty to find the defendant guilty of first degree murder”; (3)  disparaging defense counsel and instructing the jury to disregard the circumstances under which defendant’s statement was made; and (4) characterizing the case as the “worst case of domestic violence you are ever going to hear about,” stating that defendant had “the heart and mind of a killer,” and describing the victim with “the life oozing out of her body.”

The State contends that defendant has waived review of all of the alleged improper comments by failing to object to the comments and failing to include the alleged errors in his posttrial motion.

Issues not preserved for appeal may be considered under the plain error rule where the error affects substantial rights or where the evidence is closely balanced.  
People v. Keene
, 169 Ill. 2d 1, 17-18 (1995).  We will address each alleged improper comment; however, we note that based on the strength of the evidence and the nature of the error, the plain error exception to the waiver rule is inapplicable in the instant case.
  See
 People v. Johnson
, 114 Ill. 2d 170, 198 (1986); 
People v. Herrett
, 137 Ill. 2d 195, 210 (1990) (plain error rule applies when the evidence is closely balanced or when the error is so fundamental and of such a magnitude that defendant was denied a fair and impartial trial and remedying the error is necessary to preserve the judicial process).

A prosecutor is given great latitude in making closing arguments, and the trial court’s determination of the propriety of the argument will stand absent a clear abuse of discretion. 
 People v. Cisewski
, 118 Ill. 2d 163 (1987).  While a prosecutor may not make arguments or assumptions that have no basis in evidence, improper comments or remarks are not reversible error unless they are a material factor in the conviction or cause substantial prejudice to the accused.  
People v. Robinson
, 157 Ill. 2d 68, 84 (1993).  Where there are allegations of prosecutorial misconduct, arguments of both the prosecutor and defense counsel must be reviewed in their entirety, and allegations of improper comments must be placed in their proper context.  
People v. Williams
, 192 Ill. 2d 548, 573 (2000).  Therefore, we examine the alleged improper comments in context of the entire trial record, including the rulings of the trial judge on objections made during the arguments.

We address the first comment alleged by defendant to be improper regarding the State’s argument as to the huge difference between first and second degree murder.  The State argued in rebuttal as follows:

“[THE STATE]: Good afternoon, ladies and gentlemen.  The huge injustice would be to find the defendant guilty of second degree murder.  That would be a huge injustice.  The difference between first degree murder and second degree murder is huge.

[THE DEFENSE]: Objection, your Honor.

[THE STATE]: It is a huge difference.

[THE DEFENSE]: Objection.

 THE COURT: Hold on just a minute.  He may argue.  He may argue, Mr. Hill.

[THE STATE]: On the one hand first degree murder, that’s just what it is, first degree murder; but second degree murder is so much different in many ways.

[THE DEFENSE]: Objection again.

THE COURT: Mr. Hill, he may argue.  Any misstatement of the law I’ll take care of.

[THE STATE]: Because in second degree murder there’s a finding of justification, and there is no justification in this case for what the defendant did.  Second degree murder would be a huge injustice.

I want you to be very clear on what the law is.  It is not as counsel said whether the defendant acted unreasonably.  That is not what determines a second degree murder from first degree murder is whether he acted unreasonably.  That’s not it as you were just told.  You will –

[THE DEFENSE]: Objection, your Honor.

THE COURT: Overruled.

[THE STATE]: You will get the instructions to read back in the jury room, and before that while you’re still out here, Judge Gausselin will read to you the instructions.  These are the rules that you apply to this case.  It’s that simple.  Not what I say, not what the defendant’s attorney says, but what Judge Gausselin reads you from the instructions and what instructions you get back in the jury room.”

The State then noted the instructions and proceeded to discuss the evidence.

Regarding the State’s argument in rebuttal as to the “huge difference” between first and second degree murder, defendant contends that “[n]o juror could have missed the implication of the State’s remarks, namely, that a conviction for second degree murder would result in a far lesser punishment for Sutton.”  We note we originally reversed and remanded this case for retrial based upon various errors including the State’s comment that any verdict other than a guilty verdict of first degree murder “ ‘lets him walk away from this.’ ” 
 People v. Sutton
, 316 Ill. App. 3d 874, 894 (2000).

We find the comments by the State in the instant case concerning the “huge difference” between first and second degree murder to be factually and legally accurate.  To return a verdict finding defendant guilty of second degree murder, the jury would have to find the defendant acted under an unreasonable belief that circumstances were such that, if they existed, would justify or exonerate the killing.  720 ILCS 5/9-2 (a) (West 1996).  In context, the State properly argued that second degree murder differed in many ways from first degree murder, including the fact that in second degree murder there is a finding of justification.  Moreover, the State’s comments were an invited response to defense counsel’s remarks regarding the elements of second degree murder.

Unlike the improper comments that were made during the first trial, the State did not once mention a difference in sentencing or punishment between first degree and second degree murder, or indicate that second degree murder would result in a lesser sentence.  See 
Sutton
, 316 Ill. App. 3d at 894-95.  Unlike the first trial, the State did not argue that any verdict other than a guilty verdict of first degree murder “ ‘lets [Sutton] walk away from this.’ ”
  Sutton
, 316 Ill. App. 3d at 894.  Unlike the first trial, the State did not argue that, depending on the verdict, the defendant could avoid imprisonment.  See 
Sutton
, 316 Ill. App. 3d at 895.  Unlike the first trial, the State made no inaccurate statement as to the punitive effect of the verdict.  See 
Sutton
, 316 Ill. App. 3d at 895.  

Defendant, in support of his argument, relies on
 People v. Crossno
, 93 Ill. App. 3d 808, 823 (1981).  When we originally reversed and remanded for retrial, we found the
 Crossno
 case instructive.  We noted in our original opinion that the State in
 Crossno
 improperly commented in rebuttal that a conviction on a lesser included offense would be a slap on the wrist. 
 Sutton
, 316 Ill. App. 3d at 895.  We found the comment made by the State during defendant’s first trial that any verdict other than guilty of first degree murder “ ‘lets him walk away from this,’ ” improperly communicated to the jury that the defendant will receive a lesser sentence if not convicted of first degree murder.  
Sutton
, 316 Ill. App. 3d at 894.  However, on retrial the above-noted comments made by the State in rebuttal did not interject sentencing concerns into the jury deliberation process.  Rather, the State accurately stated the law and relied on the facts in support of its argument.

The State properly argued the differences between first degree and second degree murder.  At issue in the instant case was the degree of defendant’s culpability.  First degree murder is murder without any justification or mitigating circumstances.  Second degree murder is a lesser offense because there is a lesser degree of culpability due to mitigating circumstances.  The argument in the instant case did not communicate the possibility of a reduced sentence but, rather, properly discussed the different elements between first and second degree murder.

Defendant further contends the comments that followed the above-noted argument were also improper.  The State, after discussing the law and the evidence with no objection from defense counsel, then argued as follows:

“[THE STATE]: Why give him what he wants.  Why give him second degree because that’s what he wants.  What has he done to deserve it.

[THE DEFENSE]: Judge, I would object.

THE COURT: That will be sustained.”

After the trial court sustained the objection, the State immediately moved on to another line of argument.  The objection of defense counsel to the above-noted brief comment by the State was sustained.  That prompt action by the experienced trial judge cured any prejudicial impact by the State’s brief comment. 
 People v. Kidd
, 175 Ill. 2d 1, 51 (1996) (trial court’s prompt sustaining of objection cured any prejudice).  The State did not repeat that comment.  

Additionally, before trial, the judge instructed the jury that arguments are not evidence and are not to be considered as such.  The jury is presumed to follow the law.  
People v. Taylor
, 166 Ill. 2d 414, 438 (1995) (“[jurors are] presumed to follow the instructions that the court gives [them]”).  There was also a written instruction given to the jury after trial that described the difference between arguments and evidence and instructed the jury that “any statement or argument made by the attorneys which is not based on the evidence should be disregarded.” the judge instructed the jury that arguments were not evidence and they were not to consider any argument if he sustained an objection.  (Pat, check record did he say this at either the beginning or end of trial? 

The judge further instructed the jury that closing arguments should be confined to the evidence and to reasonable inferences from the evidence. 
 
The ability of a properly instructed jury to follow the instructions is one of the cornerstones of our jury system. 
 
People v. Illgen
, 145 Ill. 2d 353, 376 (1991) (“[f]aith in the ability of a properly instructed jury to separate issues and reach a correct result is the cornerstone of the jury system”).  
Moreover, the brief  nature of the above-noted comment, if error, was harmless beyond a reasonable doubt.  This brief statement, to which defendant’s objection was immediately sustained, did not cause substantial prejudice to the defendant such that the verdict would have been different had the statement not been made.  
Cisewski
, 118 Ill. 2d at 175 (“[t]o constitute reversible error, the complained-of remarks must have resulted in substantial prejudice to the accused, such that absent those remarks the verdict would have been different”).

Defendant further argues that the State “committed misconduct by telling the jurors, at the conclusion of its rebuttal argument, that it was their duty to convict Sutton of first degree murder.”  The State in rebuttal argument stated the following:

“[THE STATE]: ***  The defendant is guilty of first degree murder, ladies and gentlemen.  There is nothing about this case in any way about self-defense.  She was no threat of imminent death or imminent great bodily harm.  And he never believed that she was a threat of imminent death or imminent great bodily harm.

And because that is the evidence in this case, it’s your duty to find the defendant guilty of first degree murder.”

We find defendant’s argument regarding the above-noted comments waived.  Defendant failed to object to the remark at trial and failed to include it in his motion for a new trial.  Defendant contends review is proper under the plain error exception to the waiver  rule.  Based on the strength of the evidence and the nature of the error, the plain error exception to the waiver rule is inapplicable in the instant case.  
Herrett
, 137 Ill. 2d at 203; 
Johnson
, 114 Ill. 2d at 198.

Waiver aside, we find the argument was proper.  It is the duty of the jury to return a verdict based on the law and the evidence.  The above-noted comments by the State communicated to the jurors that based on the evidence it was their duty to find the defendant guilty of first degree murder.  The State did not tell the jury it was obligated by its oath to return a particular verdict. 
 People v. Nelson
, 193 Ill. 2d 216, 227 (2000) (improper argument where State told jury, “ ‘Whenever a jury acquits a person who has been proven guilty they don’t follow their oaths.  And if you let the defendant *** walk out of this courtroom on this evidence I would suggest you have not lived up to your oaths’ ”).  In the instant case, the State did not mention the word “oath” but, rather, argued that the evidence supported a finding of guilty. 
 People v. Diaz
, 169 Ill. App. 3d  66, 70-71 (1988) (State urging the jurors to “ ‘do your duties as jurors and sign your names to the guilty verdict form’ ” properly reflected the law that if the State proved each element of the crime charged beyond a reasonable doubt, the jury must find the defendant guilty).  Taken in context, the State asked the jury to find the defendant’s conduct constituted first degree murder and argued that the evidence failed to support a finding of second degree murder.  The State’s argument properly communicated that the evidence supported a verdict of guilty of first degree murder.

Defendant further contends that “[t]he prosecution’s disparagement of defense counsel, accusing him of trying to distract the jury by yelling and screaming about Sutton’s statement, followed by its instruction to the jury to disregard the circumstances under which the statement was made, was prejudicial error.”  Regarding that contention, the record reflects the following:

“[THE STATE]: But let’s talk about this statement for a minute.  Counsel wants to tear it up and yell and scream and all that.

[THE DEFENSE]: Judge, objection.  I’m not on trial.

THE COURT: Sustained.

[THE STATE]: But the fact is, ladies and gentlemen, the defendant testified.  This defendant testified that everything in here is basically true, basically true.

And the defendant told you that Detective Dempsey treated him with decency and respect.  But there’s this argument thrown out there well, why did you go to 11th
 and State and wear him down and this and that.  You heard that just said.  But you’re not to reach your verdict on the arguments like that, you just reach your verdict on the evidence you heard from the witness stand.  And the defendant told you that he was treated – 

[THE DEFENSE]: I would object.  That’s not what the evidence is.

THE COURT: Overruled.

[THE STATE]: The defendant told you that he was treated with decency and respect and that everything in this statement was basically true.  That’s what the defendant told you about this.” 

Regarding the first comment by the State characterizing defense counsel as yelling and screaming, any prejudice caused by that brief personal characterization was cured when the trial court promptly sustained the defendant’s objection. 
 Kidd
, 175 Ill. 2d at 51;
 People v. Graca
,
 
220 Ill. App. 3d 214 (1991).  The State’s additional argument as to the circumstances surrounding defendant’s statement was based on the evidence and properly responded to defense counsel’s assertion in closing argument that the police “isolated” defendant and “wore him down.”  Although defendant may have been isolated, we note that at trial defendant, under cross-examination by the State, admitted the detective treated him fairly and decently, and that no one forced him to say anything in the statement:

“[THE STATE]: After you were arrested, you’re the one who asked to talk to Detective Dempsey, right?

DEFENDANT: Yes.

[THE STATE]: Because he treated you fairly and decently, isn’t that true?

DEFENDANT: I’ve had dealings with Detective Dempsey before, yes.

[THE STATE]: My question though –

DEFENDANT: Yes.

[THE STATE]: He’s treated you fairly and decently, right?

DEFENDANT: Yes.

[THE STATE]: No one forced you to say anything in that statement, correct?

[THE DEFENSE]: Objection, your Honor.  What statement is he referring to?

THE COURT: You’re going to have to be more clear than that.  Your objection will be sustained.

[THE STATE]: Did you give him more than one handwritten statement?

DEFENDANT: I made one statement.

[THE STATE]: Now in that statement no one forced you to say anything in it, right?

DEFENDANT: The statement I gave is not the statement that you have.

[THE STATE]: I’m not talking about content, I’m talking about nobody forced you –

DEFENDANT: Oh, no, no.

[THE STATE]: – to say anything in the statement, isn’t that true?

DEFENDANT: Yes, it’s true.

[THE STATE]: You were advised of your rights, weren’t you?

DEFENDANT: Yes.

[THE STATE]: And you never said that you didn’t want to talk, right?

DEFENDANT: Yes.”

The record reflects the prosecution’s argument regarding the circumstances surrounding the defendant’s statement was based on the evidence.  That argument properly responded to defense counsel’s argument that the police “isolated” defendant and “wore him down.”

Defendant further contends the State, in opening statement, improperly told the jury that this case was “the worst case of domestic violence you are ever going to hear about” and that defendant had “the heart and mind of a killer,” and invited the jury to imagine Hankins with “the life oozing out of her body.”  In support of his contention that these statements were improper, defendant argues that “the prosecutor injected extremely inflammatory and irrelevant material into Sutton’s trial, the prejudicial impact of which requires that Sutton receive a new trial.”  Defendant contends these statements were designed to appeal to the jury’s emotions and “persuade them to convict based on something other than a rational consideration of the facts.”

Defendant failed to object at trial or preserve the above-alleged improper arguments in his motion for new trial.  For the reasons previously noted, the plain error exception to waiver is not warranted.  Waiver aside, the comments do not amount to reversible error.  We note the purpose of an opening statement is to advise the jury of what each party expects the evidence to prove, including a discussion of reasonable inferences to be drawn from the evidence. 
 People v. Kliner
, 185 Ill. 2d 81, 127 (1998).

Characterizing the defendant as having “the heart and mind of a killer” was supported by the evidence and amounts to an unfavorable characterization commenting on the evil nature of defendant’s conduct.  A prosecutor may make unfavorable comments about the defendant and denounce his wickedness.  
People v. Jackson
, 84 Ill. 2d 350, 360 (1981) (“prosecutor may properly comment unfavorably on the defendant and the violence of the crime, when supported by the evidence”
);
 
People v. Pursley
, 284 Ill. App. 3d 597 (1996).  
Accordingly, we do not find this comment to be improper.

The State’s comment that “this was the worst case of domestic violence” was supported  by the evidence; the victim was not only severely beaten about the face, head, and back, but was stabbed 23 times, including 9 times in the back, in the presence of her newborn son.  The characterization, while accurate, also interjected personal opinion into the opening statement.  Similarly, the comment about the “life oozing out of” the victim was supported by the evidence that the victim bled to death as the result of the multiple stab wounds inflicted by defendant.  While accurate, the comment interjected inflammatory characterization into the opening statement.

However, before reversal is required, error in opening statement must result in substantial prejudice such that the result would have been different absent the improper remark. 
 People v. Cloutier
, 156 Ill. 2d 483, 507 (1993).  Based on the totality of the record, these statements were not so inflammatory or flagrant as to jeopardize the integrity of the judicial process and deny defendant a fair trial.  
Cisewski
, 118 Ill. 2d at 175.  The nature, extent, and duration of the improper comments were not of such a magnitude as to have deprived defendant of a fair trial. 
 Cisewski
, 118 Ill. 2d at 175 (comments by State were not of such a magnitude as to have altered the trier of fact’s determination of defendant’s guilt).

The jury was instructed that comments by the attorneys in opening statement and closing argument should not be considered by the jury as evidence.  As previously noted, a cornerstone of our jury system is the ability of a properly instructed jury to follow the instructions on the law. 
 People v. Illgen
,
 
145 Ill. 2d 353, 376 (1991).  Jurors are presumed to follow the trial court’s instructions. 
 People v. Taylor
,
 
166 Ill. 2d 414, 438 (1995).  The instruction to the jury, together with the limited nature of the improper comments, precluded substantial prejudice.  The jury verdict would not have been different absent the brief personal opinion and characterization by the prosecution in opening statement.

For the reasons previously discussed, the judgment of the circuit court of Cook County is affirmed. 

Affirmed.

FITZGERALD SMITH, P.J., and GALLAGHER, J., concur.